KINTZING et al. v. McELRATH et al. (a)

Where a sheriff has returned to a *fi. fa.*, "money made on this writ" without any re-ference to a levy, parol testimony of an actual levy having been made is inadmissible, in an action of trespass against the sheriff.

A bargainor dealing with one, who acts on the supposition of his own defective right by reason of the supposed validity of a conveyance, is not bound to disclose his know-ledge that the conveyance was fraudulent; the means of information being equally within the power of both.

A purchaser is not bound to disclose his knowledge of facts which enhance the price, where opportunities for information are equally open to both parties. Per Gibson, C. J.

IN error from the Common Pleas of Clinton.

Trespass against the sheriff and his deputy, and Moorhead, for seizing personal property, consisting of household furniture. It appeared, that one Carskadden had assigned the property in ques-

---

(a) This, and the two subsequent cases, were argued at Harrisburg, May Term, 1846, but the reports were unavoidably delayed until the present time.

tion to Church, for the benefit of creditors on the 20th of December, by deed recorded. On the 30th, writs of *fi. fa.* against Carskadden were left with the sheriff, to which he returned "money made on this writ." It also appeared, that Moorhead, one of the defendants, was bail for Carskadden in the judgments on which these writs issued. On the 6th of January, Carskadden sold and delivered possession of the property in question to the plaintiffs, with the assent of Church, his assignee, who thereby obtained a discharge from liability as surety for rent payable by Carskadden to the plaintiffs.

The first bill of exceptions was, the admission of parol evidence of a levy under these writs. There was no return of a levy made, nor any schedule attached to the writs, but the court permitted the defendants to show, that at the time of the trespass proved by the plaintiffs, the defendants had the writs, and seised and sold thereunder.

The error assigned in the charge, was under the following circumstances. After the writs were left with the sheriff, one of the plaintiffs called on Mackey, the attorney, stating their intention to purchase, and inquired of him whether he intended to levy on this property. He informed them that he knew of the assignment, and there was or would be a contest about the title; and as he had security, he would not. He did not, however, interfere, and Moorhead, the bail, procured the levy to be made by the sheriff.

The court (WOODWARD, P. J.) instructed the jury, that it seemed from the evidence that the assignment to Church was a fraud, particularly as the assignee had enabled the assignor to effect a subsequent sale while executions were pending, and thus relieve himself from personal liability. That the defendants could not justify under the writ if the plaintiff's attorney had induced the present plaintiffs to purchase on the faith of his declarations that he did not intend levying on the property. But that this waiver amounted to nothing if obtained by suppression of the truth. The jury were therefore to inquire whether the assignment was fraudulent, and secondly, whether plaintiffs knew it was so, *for if they did, they were bound to disclose the fact to Mackey, the attorney.* If knowing the fact they did not disclose it, they could not avail themselves of the waiver or agreement.

This, with the admission of the evidence, were the errors assigned.

*Armstrong,* for plaintiff in error, cited Watson on Sheriffs, 72, 204.

*J. W. Hale,* contrà, cited 1 Barr, 457.

GIBSON, C. J.—The first point raised by the assignment of errors seems to have been settled by McClelland v. Slingluff, 7 Watts & Serg. 134, in which it was ruled in an action against a sheriff who had returned on an execution, "made $349 35 and costs, $100 of which applied to rent, and the balance to this execution," that it was not competent for him to prove by parol an actual levy pursuant to it. In the case before us, the return was "money made on this writ," yet the sheriff was allowed to prove an actual levy by parol evidence.

The charge was erroneous in the direction, that if Kintzing knew the assignment of Carskadden to Church to be fraudulent, and omitted to communicate his knowledge to Mackey, when the latter informed him that he intended not to levy the executions under his control, on the property subsequently purchased by Kintzing, on the faith of his declaration, but to pursue the bail, he was guilty of a fraud which would effect his title. Mackey's course might doubtless have been changed by a knowledge of the fact, but was Kintzing bound to disclose it? The case which directly meets the question, is Laidlaw v. Organ, 2 Wheat. 178, in which the facts were, that Shepherd, interested with Organ, and in treaty with Girault, a member of the firm of Laidlaw & Co., at New Orleans, for a quantity of tobacco, had secretly received intelligence over night of the peace of 1815, between England and the United States, which raised the value of the article from thirty to fifty per cent. : Organ called on Girault on Sunday morning, a little after sunrise, and was asked if there was any news, by which the price of it might be enhanced? but there was no evidence that Organ had asserted or suggested any thing to induce a belief that such news did not exist, and under the circumstances the bargain was struck. Chief Justice Marshall delivered the opinion of the court, to the effect, that the buyer was not bound to communicate intelligence of extrinsic circumstances which might influence the price, though it were exclusively in his possession, and that it would be difficult to circumscribe the contrary doctrine within proper limits, *where the means of intelligence are equally accessible to both parties.* And the principles of the decision have been recognised as law wherever the case has been quoted, though Mr. Verplank has written a book against it. The validity of the sale, too, depended on the law of Louisiana, whose jurisprudence is founded on the Roman law, which professes to deal with principles of morality too subtle for administration by an earthly tribunal, and to enforce duties which are not regarded by the common law. But even the civilians, as was admitted in

2 R

the argument, distinguish between the forum of the conscience and the forum of the law, for which Pothier's Traite de Vente, art. 2, 238, (an extract from which is found in a note to the case,) is a very sufficient authority. He observes, that though the rule of the vendor's duty, not to conceal from the vendee any circumstances connected with the thing sold, ought to be followed *in foro conscientiæ*, it is very seldom followed by the tribunals. Perhaps the reason is, that it is seldom practicable to apply it to particular cases. The rule, too, is predicated of the duty of the vendor, who alone is presumed to know the quality and condition of the commodity, and I doubt very much, whether even a Roman judge would have set aside a sale of land containing a mine, which was known only to the vendee. But although these fine-spun equities may be enforced by a judicial magistrate, uninfluenced by precedent, and shaping his decrees according to what he may deem strict justice, they cannot be attempted by a common law court, or with entire success by a chancellor. The only practicable rule for all cases, seems to be that stated by Chief Justice Marshall, that where the means of knowledge is equally accessible to both parties, each must judge for himself. Kintzing might have been mistaken in believing the assignment to Church to be fraudulent in point of law, or he might have thought it fair, though it were otherwise, and the law is not so unreasonable as to make him jeopard his interest by expressing a conjecture about it; but even had he actually known it to be void, he was not bound to declare it.

Judgment reversed, and a *venire de novo* awarded.