# Wilbur F. Rose, Appellant, *v.* Charles Barclay and The Camden Gas Light Company.

*Corporations—Definition of dividend—Contract.*

A dividend is that portion of the profits and surplus funds of a corporation which has actually been set apart by a valid resolution of the board of directors, or by the shareholders at a corporate meeting, for distribution among the stockholders, according to their respective interests, in such a sense as to become segregated from the property of the corporation to become the property of the shareholders distributively. It is a matter of no difference whether the dividend is declared in stock or paid in cash and thereafter converted into stock by the shareholders; in either event it is a distribution of the surplus profits of the corporation.

When the means of information as to the facts and circumstances affecting the value of the subject of sale are equally accessible to both parties, and neither of them does anything to impose on the other, the disclosure of any superior knowledge which one party may have over the other is not requisite to the validity of a contract.

A contract in writing for the sale of a certain number of shares of stock of a corporation " including all dividends due or to become due thereon," carries with it a stock dividend which had been previously declared; and a court of equity will enforce a transfer of the stock represented by the dividend, although the vendor did not know that such a dividend had been declared, while the vendee had knowledge of it, but was silent on the subject.

Argued March 24, 1899.   Appeal, No. 105, Jan. T., 1899, by plaintiff, from decree of C. P. No. 4, Phila. Co., March T., 1894, No. 1348, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.   Reversed.

Bill in equity to enforce a transfer of stock.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court rescinding the contract.

*John G. Johnson,* for appellant.—The receipt covered the stock dividend: Weimer on Pennsylvania Corporation Law, p. 342; Com. v. Cleveland, etc., R. R. Co., 29 Pa. 370; Allegheny v. Ry. Co., 179 Pa. 421.

The trial judge erred in concluding that there was any misunderstanding as to the subject-matter of the sale : Hazlett v. Powell, 30 Pa. 297.

Under a sale of the stock with all dividends due, the stock dividend added to the value ; but in agreeing to transfer the stock and all dividends due, Barclay undertook to divest himself, in favor of Rose, of everything he possessed : Beach on Corporations, secs. 383, 614 ; Bispham's Eq. sec. 211 ; Kintzing v. McElrath, 5 Pa. 467 ; Neill v. Shamburg, 158 Pa. 263 ; Edelman v. Latshaw, 159 Pa. 647 ; Gordon v. Preston, 1 Watts, 385 ; Ashhurst's App., 60 Pa. 317 ; Harvey v. Kay, 9 B. & C. 356 ; Starkie on Evidence, sec. 455.

The relief demanded was not specific performance of an executory contract, but the completion of a part performed contract : McManus v. Cooke, L. R. 35 Chan. Div. 697 ; Williams v. Morris, 95 U. S. 457 ; Townsend v. Vanderwerker, 160 U. S. 171 ; Goodwin Co.'s App., 117 Pa. 514 ; Cowles v. Whitman, 10 Conn. 121 ; Bispham's Eq. sec. 368 ; Doloret v. Rothschild, 1 Sim. & Stu. 590 ; Pooley v. Budd, 14 Beav. 34 ; Kerr on Injunctions, 120 ; Ramsdell v. Butler, 60 Maine, 216 ; Baum's App., 113 Pa. 66 ; Harper's App., 109 Pa. 15 ; Electric Co.'s App., 114 Pa. 574.

*E. Cooper Shapley*, for appellees.

OPINION BY MR. JUSTICE DEAN, May 23, 1899 :

A large amount of the gross earnings of the Camden Gas Light Company having been expended in improvements of its plant, which had also from other causes increased in value, it was resolved by the company on June 5, 1893, to increase the capital stock from $300,000 to $600,000, the increase to represent the enhanced value of the property ; it was further directed, that this increase of stock should be divided among the stockholders as they appeared of record on July 1 following, and within twenty days thereafter certificates for the same should be delivered. Charles Barclay, the appellee, was the owner of record of thirty shares of the stock on June 5, when the resolution was adopted, and on July 1, when it took effect. On July 6, before the expiration of the twenty days for delivery, Barclay made this contract with Rose, the appellant :

" 409 Chestnut Street, Philadelphia.

" Received, Philadelphia, July 6/93, of W. F. Rose, $4,500, in full payment for thirty shares of the capital stock of the Camden Gas Light Company, including all dividends due or to become due thereon.

(Signed)             " CHARLES BARCLAY."

The price was at the rate of $150 per share; the par value was $100 per share; the price agreed to be paid was considerably higher than the stock had theretofore sold for, the highest before that being $135 per share; the thirty shares were transferred and delivered by Barclay to Rose, on payment to him by Rose of the full consideration; Rose then had the certificate for the thirty shares duly placed in his name on the books of the company, but when he demanded those embraced by the stock dividend, he was informed that Barclay had given the company notice not to deliver them to him, Rose, as they did not pass by the contract, and being a mere stakeholder as between the seller and purchaser it could not act until the disputed ownership was settled. Rose then brought this bill against both Barclay and the company to compel a transfer of the stock dividend. It is, really, not a bill for specific performance of a contract between the buyer and seller of stock, but one to compel the performance of an alleged corporate duty by a corporation which has before it the contract and, by the pleadings, has submitted itself to the order of the court. The court below, after full hearing, decreed a rescission of the contract. Whether the court shall direct the company to transfer to appellant the stock dividend depends on the interpretation and validity of the contract between the parties to it, Rose and Barclay.

We first peruse the writing to ascertain the terms of the contract. The paper is not, as argued by appellee, a memorandum; it is a contract complete in all its parts, with no omission of expression of intention. We do not see in it the least sign of ambiguity. It was written by Barclay, a lawyer of standing in the profession, who certainly must be presumed to have known the legal effect of the words he adopted to describe his own property, the subject of the sale. He sold thirty shares of stock, " including all dividends due or to become due thereon." It is argued, that only cash dividends were intended by these words.

That, however, is not the meaning of the word " dividend." In Weimer on Pennsylvania Corporation Law this definition of dividend is given, page 342:

" A dividend is that portion of the profits and surplus funds of a corporation which has actually been set apart by a valid resolution of the board of directors, or by the shareholders at a corporate meeting, for distribution among the stockholders, according to their respective interests, in such a sense as to become segregated from the property of the corporation to become the property of the shareholders distributively. It is a matter of no difference whether the dividend is declared in stock or paid in cash and thereafter converted into stock by the shareholders : in either event it is a distribution of the surplus profits of the corporation." And this text is amply supported by Commonwealth v. R. R. Co., 29 Pa. 370, which was followed in Commonwealth v. Ry. Co., 74 Pa. 89, and then by City of Allegheny v. Ry. Co., 179 Pa. 421.

The express language of the contract, therefore, passed to Rose, absolutely, the stock dividend, and Barclay is bound by his own words, unless Rose perpetrated a fraud upon him. It is not sufficient answer for him to say, " I did not know of the stock dividend and consequently did not mean what I said ; " a lunatic, or one under some mental disability, such as gross ignorance or intoxication, might perhaps make such answer; but it cannot avail a lawyer who ought to be presumed to know, not only the common meaning of common words, but also their legal signification. Nor was there any evidence of over-reaching ; of such constraint as at times is exercised over a weak and impecunious owner by a hard and grasping buyer. According to Barclay's own evidence, when in a casual conversation he learned that Rose would have given $150 for the one share he had sold to Stiles for $135, his cupidity was at once aroused, and he within an hour sought out Rose and solicited him to buy his remaining shares at $150. There is no evidence that before this second interview Rose even knew that Barclay owned other than the one Stiles share ; the party claiming to have been wronged hunted up the wrongdoer and besought him to purchase his wares. Hard and fraudulent bargains are not often thus initiated. Then, the question of dividends was not a mere trivial incident of the negotiations, which might have inadvert-

ently crept into the contract by reason of its insignificance; it was the one prominent point of the bargain over which they "higgled." Rose exacted, as a prerequisite to negotiations, this concession on the part of the seller, and peremptorily refused to buy unless the dividends passed by the contract. Nor was the bargain such a hard one as is assumed in the argument; there was no such disparity between the value and the price paid as suggested. The $600,000 of stock stood for precisely the same value as the $300,000; the increased issue, only, operated to make available the increased value to the individual stockholders; in a certain sense, they simply divided what they had theretofore held in common; Rose paid $150 per share for thirty shares, and with the stock dividend was entitled to thirty more or sixty shares; for these he paid $4,500; but the stock soon after dropped to $100 per share, making the whole sixty shares worth $6,000, only $1,500 more than he had paid, instead of being worth $4,500 more as argued. In fact, at the time of the purchase, it was largely a matter of opinion as to a probable future profit. There was no such hardship in the bargain as shocks equity and of itself gives rise to a suspicion of fraud.

Up to this point, there is nothing in the contract itself, the subject of it, or in the conduct of the party claiming its enforcement, to move a chancellor to destroy it. But, three other facts are found by the learned judge of the court below, on which, in the main, he bases his conclusion that the contract should be set aside: 1. Rose knew, before he purchased, that the stock dividend had been declared. 2. Barclay did not know it. 3. Rose did not disclose his knowledge of the stock dividend to Barclay. It will be noticed, this dividend was declared at a regularly called meeting of the stockholders; the corporate action was binding on all the stockholders; as to them the resolution was public, and constructively, all knew of it. Both of the parties were stockholders; it was the case of two stockholders of the same corporation, men of equal intelligence and business shrewdness, dealing at arms' length about property concerning which each had abundant and equal opportunities of knowledge; for, the office of the company was within five minutes' walk of the room where they bargained. The seller reposed no trust in the buyer, and relied on no representation of his as to value, or circumstances affecting the value; the

buyer made no representations; the seller sold for the highest price he thought he could get. It may be that in bargaining each of the parties should disclose to the other his real belief as to actual value of the thing to be sold; that is, Rose's conscience should have been tender enough to impel him to say to Barclay, " A stock dividend has been declared on this stock which in my opinion will enable me to make a profit;" and as we understand it, that is the rule of the civil law which, in theory, denies any rule of action except that derived from a rigorous inspection of the anatomy of conscience. But, as said by GIBSON, C. J., in Kintzing v. McElrath, 5 Pa. 467, " The civil law professes to deal with principles of morality too subtle for administration by an earthly tribunal, and to enforce duties not regarded by the common law." The rule, too, he further says, " is predicated of the duty of the vendor, who alone is presumed to know the quality and condition of the commodity, and I doubt very much whether even a Roman judge would have set aside a sale of land containing a mine which was known only to the vendee." Says this Court, in Hazlett v. Powell, 30 Pa. 297, quoting with approval Atkinson on Marketable Titles: " When the means of information as to the facts and circumstances affecting the value of the subject of sale are equally accessible to both parties, and neither of them does anything to impose on the other, the disclosure of any superior knowledge which one party may have over the other is not requisite to the validity of a contract." And this is the common-law rule as stated by Story on Contracts, section 516. It is also laid down by MARSHALL, C. J., in the celebrated case of Laidlaw v. Organ, 2 Wheaton, 178. And it is said in Hershey v. Keembortz, 6 Pa. 128, referring to Laidlaw v. Organ, " a severer rule of morality would be impracticable in a commercial community."

Therefore, assuming the facts to be as the learned judge of the court below found them, they did not warrant him in decreeing a rescission of this contract. We hold that Barclay, by his contract, having divested himself of the stock dividend, which was thirty additional shares, and the contract having been presented to the company and a transfer requested by Rose, it was the duty of the company to transfer to him on its books, not only the thirty old shares, but also to issue in his name and deliver to him the thirty new shares embraced in the terms of

the resolution of June 5, 1893; and it is accordingly decreed that such transfer and delivery be made by said company. Further, the decree of the court below of February 2, 1899, declaring the contract between Rose and Barclay rescinded, etc., is reversed and set aside at the costs of Charles Barclay, the appellee.