## Mallory's Estate.

*Decedents' estates — Tenant for life — Income—Corporations—Corporate stock—Dividends—Division among life-tenant and remaindermen.*

1. When the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, with remainder over, the surplus profits which have accumulated in the lifetime of the testator, which are not divided until after his death, belong to the *corpus* of his estate, whilst the dividends of earnings made after his death are income and are payable to the life-tenant, no matter whether the dividend be in cash, scrip or stock.

2. A dividend is that portion of the profits and surplus funds of a corporation which has actually been set apart by a valid resolution of the board of directors, or by the shareholders at a corporate meeting, for distribution among the stockholders, according to their respective interests, in such a sense as to become segregated from the property of the corporation to become the property of the shareholders distributively. It is a matter of no difference whether the dividend is declared in stock or paid in cash and thereafter converted into stock by the shareholders; in either event, it is a distribution of the surplus profits of the corporation.

Petition for award of stock dividend. O. C. Erie Co., Sept. T., 1923, No. 146.

*Harry L. Moore* and *Daniel D. Neighbours*, for petitioner.

*John B. Brooks* (of *Brooks, English & Quinn*), for respondents.

*W. S. Carroll*, for guardian of two minors.

CLARK, P. J., Jan. 15, 1924.—The petitioner asks to have 1700 shares of a stock dividend awarded to her. The answer challenges her right to such an award and claims that a part of this stock dividend was earned in testator's lifetime and should be apportioned between the petitioner, a life-tenant, and remaindermen.

Testimony was taken and argument had, at which time it was conceded by all parties in interest that this apportionment should be made, and the controversy is how shall the apportionment be made equitably.

Facts agreed to are that: Frederick Eugene Mallory, the testator, died June 28, 1917; that his will was executed Aug. 2, 1913; that it was duly proved and registered July 3, 1917, and that Jennie R. Mallory, the wife of testator, was appointed by him as sole executrix of his will; that she qualified as such and has since been acting as executrix.

The following additional and important facts were also agreed to: That the Ohio Fuel and Supply Company is a corporation; its authorized capital was $20,000,000; that there remains unissued stock of $187,000; that the number of shares issued is 792,520; that the par value of each share is $25; that on June 30, 1917, only one day intervening between this date and that of the testator's death, June 28, 1917, the ascertained value of the plant was $19,813,000, not including any earned surplus, and was accepted as the amount to be considered in the present case; that on March 6, 1923, the board of directors of the aforesaid company declared a 100 per cent. stock dividend, payable to all stockholders of record on March 17, 1923, and provided and directed that there should be issued and delivered to the stockholders of the company out of this stock dividend one additional share for each one share of capital stock standing in the names of the stockholders on March 17, 1923; that this was done, and the stock thus issued amounted to $19,813,000; that the petitioner, as executrix, received 1700 shares now to be apportioned; that of this total stock dividend there was earned prior to the death of testator $9,247,180.30, and the balance since his death $10,565,819.70.

Mallory's Estate.

The testator in his will gave to his wife, Jennie R. Mallory, the petitioner and executrix, in trust 1700 shares of stock of the Ohio Fuel and Supply Company, "to have, hold and pay over to herself, for her own use and benefit, the use, income and dividends thereof for and during all the term of her natural life," and at her death over to several remaindermen, thus constituting the wife a beneficiary for life, who received the stock in question, still holds it and now requests its apportionment.

The law governing distributions of this character is well settled and is stated in Earp's Appeal, 28 Pa. 368, decided in 1857, which has been followed and affirmed in several Supreme Court decisions since, and is as follows: "When the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, the remainder over, the surplus profits which have accumulated in the lifetime of the testator, which are not divided until after his death, belong to the *corpus* of his estate, whilst the dividends of earnings made after his death are income and are payable to the life-tenant, no matter whether the dividend be in cash, scrip or stock:" Stokes's Estate (No. 1), 240 Pa. 277, decided in 1913.

In this case there was capital stock of $60,608,000 and an accumulated surplus of $27,219,779 at the date of testator's death. "Subsequently to his death and at the date of the dividend, there had been added to the surplus from earnings the sum of $3,110,868. The dividend declared was the equivalent of 10 per cent. of the capital stock and amounted to $6,060,800.

"Approximately, the surplus existing at the time when the dividend was declared had accumulated in the following proportions: Before the death of the testator .8975 thereof, and after the death of the testator .1025. . . .

"The Orphans' Court held that the dividend was to be apportioned between the life-tenants and remaindermen in the proportions which the amount of the surplus earned after the death of the testator bore to the whole amount of the surplus," and proceeded to award on the basis of the decimals set forth. This was held to be error, and the following formula was prescribed by the appellate court as the correct one in that case, viz.: "The amount of the surplus earned after the death of the testator, $3,110,868, bore to the amount of the dividend, $6,060,800, the decimal proportion of .5132, or a little more than one-half, leaving .4868 of the dividend as earned prior to testator's death," and awarded in conformity therewith. Adopting this method of determining the division by substituting the amount of earnings after testator's death and dividends declared in the case at bar, the formula would be as follows: The amount of the surplus earned after the death of the testator, $10,565,819.70, bears to the amount of the dividend, $19,813,000, the decimal proportion of .5332756, or a little more than one-half, leaving .4667244 of the dividend as earned prior to testator's death.

In Stokes's Estate (No. 1), 240 Pa. 277, the undivided surplus earnings remaining in the treasury of the corporation and not declared by the board of directors to be a dividend were not considered in determining the decimal proportions.

In the case at bar the dividend was declared March 6, 1923. On March 31, 1923, it is shown by the books of the company that there was a corporate surplus unappropriated different from the surplus earnings when the stock dividend was declared. We are asked to take this amount as a factor in ascertaining the proportions for the award.

We have limited our inquiry under the agreed facts to the amount of the declared stock dividend and have not considered the excess surplus earnings not yet declared to be dividends.

On April 30, 1923, by the books of the company the unappropriated surplus earnings were not the same as those of the previous month. This entire surplus fluctuates, may all disappear or be expended in the transaction of the company's business. The directors have not made this surplus a dividend and we cannot.

There is a distinction between corporate earnings and profits. In this connection, it is helpful to note what Justice Paxson says in delivering the opinion of the court in Moss's Appeal, 83 Pa., on page 264: "As a general rule, nothing earned by a corporation can be regarded as profits until it shall have been declared to be so by the corporation itself, acting by its board of managers. The fact that a dollar has been earned gives no stockholder the right to claim it until the corporation decides to distribute it as profit. The wisdom of such distribution must, of necessity, rest with the corporation itself. From motives of prudence and self-interest, it is frequently desirable to add all or a portion of the earnings to the capital. This is sometimes necessary as a basis of credit for more enlarged operations. It is often a wise exercise of such discretion for a corporation to strengthen itself in this way, and with such discretion a stockholder cannot interfere. His only remedy is by an appeal to the ballot at the election for directors. But where a corporation, having actually made profits, proceeds to distribute such profits amongst the stockholders, the tenant for life would be entitled to receive them, and this without regard to the form of the transaction."

Such being the law, the present life-tenant cannot now, under the conditions existing in the case under consideration, grasp these surplus earnings still in the hands of the corporation and under the control of the directors and claim them as profits.

There is a further guidance upon this subject. Mr. Justice Dean, in delivering the opinion of the court in Rose v. Barclay, 191 Pa. 594, 597, quotes with approval from Weimer on Pennsylvania Corporation Law, 342, this definition: "A dividend is that portion of the profits and surplus funds of a corporation which has actually been set apart by a valid resolution of the board of directors, or by the stockholders at a corporate meeting, for distribution among the stockholders, according to their respective interests, in such a sense as to become segregated from the property of the corporation to become the property of the shareholders distributively. It is a matter of no difference whether the dividend is declared in stock or paid in cash and thereafter converted into stock by the shareholders; in either event, it is a distribution of the surplus profits of the corporation," and cases cited in support of this text.

Mr. Justice Simpson, in Thompson's Estate, 262 Pa. 278, 281, states that: "It is true that profits realized are not dividends until declared by the proper officials of the corporation; but distribution of profits, however made, are dividends, and the form of the distribution is immaterial."

The contention on behalf of the life-tenant is that the total surplus earnings as shown by the books of the company on March 31, 1923, amounting to $21,925,267.89, should be considered instead of the stock dividend declared on March 6, 1923, totaling $19,813,000, which was claimed for the remaindermen, and should be taken in determining the aforesaid decimal proportions for the division of the 1700 shares of stock dividend.

The controversy was limited as to which of these methods is correct, and that the division of the 1700 shares should be equitably made for the life-tenant and remaindermen by accepting the $21,925,267.89 in calculating the proportions as per the formula presented for the life-tenant, and, on the

Mallory's Estate.

other hand, that the correct results would be secured by adopting the $19,813,000 as per the method submitted for the remaindermen. The life-tenant's formula, as offered, gives to her 1088 shares and 612 shares to the *corpus* of the trust estate for the remaindermen, and we are requested to make the decree accordingly. We do not feel that this would be right, and decline to do so. We adopt the other plan, with the result that there should be awarded to the *corpus* of the trust estate for the remaindermen 793.43 shares and to the life-tenant 906.57 shares of the 1700 shares of the stock dividend as approximately correct and sufficiently exact for present purposes.

We cannot, however, make a permanent decree at this time, for the reason that the executrix has failed to discharge her administrative duties; all that has been done, in so far as the record shows, is the taking out of the letters testamentary and an election to take under the will.

The executrix must file her account and present the same for audit, when she may renew her contention and the foregoing opinion may be reconsidered and, if error is shown, corrected accordingly. After the account is confirmed, the duties to be observed will be those of a trustee.

From Lytle F. Perry, Erie, Pa.