KNIGHT *v.* ALAMO MANUFACTURING CO.

1. CORPORATIONS—DIVIDENDS—STOCK AND STOCKHOLDERS—PROFITS.
    Only the directors of a corporation have power to declare a
    dividend of its earnings and to determine its amount;
    so that the holder of cumulative preferred stock is not
    entitled to bring an action on his certificate for dividends
    that the board of directors have not duly declared.

2. SAME—DIVIDENDS—ACTIONS.
    The word dividends, used in a certificate of stock, does not
    mean simply profits, but does refer to such portion of
    the profits as the directors have, by proper resolution,
    ordered distributed among the stockholders.

3. SAME—EQUITY—DISTRIBUTION OF PROFITS.
    While the stockholders may be entitled to a dividend, if
    profits have been earned and a dividend refused, in a
    proceeding in equity, preferred stock is subject, in so far
    as the payment of a stock dividend is concerned, to sub-
    stantially the same rules as the common stock unless they
    are rendered inapplicable by express provisions.

4. SAME—ASSUMPSIT.
    An action at law does not lie for dividends earned but not
    declared by the board of directors.

5. SAME—CUSTOM.
    And on the facts appearing in evidence, *held*, also, that no
    profits had been earned by defendant corporation, and any
    previous practice of declaring or paying dividends on pre-
    ferred stock unauthorized by the board of directors would
    not change the settled and general rule.

6. SAME—RESALE.
    Where the corporation issued with some of the preferred
    stock an agreement described as a guaranty to resell the
    stock if the purchaser within a limited time should so
    elect, and dividends were paid regularly by the officers,
    even though other stock received none, plaintiff whose
    stock was not guaranteed did not obtain any rights by
    reason thereof.

Error to Hillsdale; Chester, J.   Submitted June 16, 1915.   (Docket No. 56.)   Decided March 30, 1916.

Assumpsit in justice's court by J. W. Knight against the Alamo Manufacturing Company for the recovery of stock dividends.   From a judgment for plaintiff, defendant appealed to the circuit court.   Judgment for defendant on a verdict directed by the court.   Plaintiff brings error.   Affirmed.

*C. A. Shepard* and *B. E. Sheldon,* for appellant.

*F. A. Lyon,* for appellee.

PERSON, J.   This action was brought in a justice's court, and the nature of plaintiff's claim is fairly explained by his declaration, which reads as follows:

"Plaintiff declares verbally in assumpsit on the following clause in certificate No. 189 of preferred stock of the Alamo Manufacturing Company, of Hillsdale, Mich., to wit: 'This stock is entitled to a cumulative dividend of 7 per cent. per annum, payable semi-annually, on the 1st day of September, and the 1st day of March of each year.'   Plaintiff says the dividend for September, 1913, and for March, 1914, have neither been paid, and the amount due plaintiff at the commencement of this suit was $72.60, for which plaintiff asks judgment."

From a judgment rendered by the justice in favor of plaintiff, an appeal was taken to the circuit court, where a verdict was directed for the defendant.   The case is brought here by writ of error.

It will be observed that plaintiff's pleading does not aver that any dividend was declared by the defendant company for either September, 1913, or March, 1914, and no such dividends were, in fact, declared.   This, together with the claim that there were no profits from which either dividend could have been declared, constitutes the defense in the case.

Plaintiff admits that dividends upon his stock are payable only from such profits as the company may make; and he also admits that, as a general rule, an action at law will not lie for a dividend until it has been duly declared by the directors of the company. But, notwithstanding these admissions, he insists that the terms of his certificate, which was authorized by a resolution of the board of directors, constitute an absolute promise to pay dividends in March and September of each year, if there are profits from which they can be paid, and that therefore the existence of such profits is a legitimate question to be determined by a jury.

In this the plaintiff is entirely wrong. His is an ordinary certificate of preferred stock, and contains no unusual provisions. It does entitle him to dividends in March and September of each year, if on those dates there are profits in the possession of the company which the directors, in the exercise of a fair discretion, believe can properly be distributed as dividends. And, being cumulative, these dividends, if there are no profits at the time which can properly be used to pay them, stand over until there are such profits. But to let a jury determine whether there are or are not profits, and, if there are any, to let it determine whether those profits may properly be distributed among the stockholders, would be equivalent to letting a jury declare the dividend. This, of course, is not the law; and, if each stockholder might call in a jury at his pleasure to determine whether a dividend should be declared, corporations would be short-lived affairs and of but little value.

"It is a well-recognized principle of law that the directors of a corporation and they alone, have the power to declare a dividend of the earnings of a corporation, and to determine its amount." *Hunter* v. *Roberts, Throp & Co.*, 83 Mich. 63 (47 N. W. 131).

190 Mich.—15.

"The property of the corporation belongs in law to the corporation, and not to the stockholders. This is just as true of the profits earned by a corporation as it is of its other assets. The stockholders of a corporation may have the equitable right to insist that the profits from the corporate business shall be divided among them, but they have no legal right to a share therein, nor is there any indebtedness to them on the part of the corporation, so as to entitle them to maintain an action against it, until a dividend has been made or declared." 2 Clark & Marshall on Private Corporations, § 517 (*b*).

The word "dividend," in plaintiff's certificate of stock, does not mean simply profits, but it does mean such profits, or such portion of the profits, as the directors, by proper resolution, have ordered distributed among the stockholders. As was said in *City of Allegheny* v. *Railroad Co.*, 179 Pa. 414 (36 Atl. 161):

A dividend "differs from profits in being taken by competent authority out of the joint property of the partnership or company, and transferred to the separate property of the individual partners or stockholders."

The thing that plaintiff's certificate of stock says he is entitled to is the declaration of a dividend in March and in September of each year, if on those dates there are profits in the hands of the company that ought justly to be divided among the stockholders. And, if directors wrongfully refuse to declare a dividend when one ought to be declared, the stockholder may have his remedy in equity; but he cannot maintain an action at law until it has been declared.

"Except as to this right of priority over common stock, preferred stock is subject, in so far as the payment of a dividend is concerned, to substantially the same rules as common stock, unless they are rendered inapplicable by express provision." 2 Clark & Marshall on Private Corporations, § 417 (*e*).

The circuit judge was right in holding that this action cannot be maintained, and, being right in his conclusion, the judgment would not be reversed even had he failed to assign a right reason for it.

In directing a verdict for the defendant company the circuit judge did not expressly put it upon the ground that the dividends had not been declared by the board of directors, although he says he had that reason in mind. What he did say in his instructions to the jury was that, in his judgment, it had not been shown that there were any profits from which a dividend could have been declared. And in this, too, we think he was right. The books of the company were not produced for the purpose of determining whether there were profits or not. The secretary testified that the company had not made any profits from which either of these dividends could have been declared. And the only evidence offered by the plaintiff to show the existence of profits were certain statements made to the plaintiff and others by the secretary at various times before the action was begun, to the effect that the company had "gilt-edge paper" for $35,000 or $36,000, but that the banks would not advance money on it at that time. It was also shown that the secretary had held out hopes to the preferred stockholders that they would get their dividends in 30, or 60, or 90 days. This came far short of proving profits. The company might have had that amount of good securities, and much more, without having made any profits. To determine whether or not a company has made profits sometimes requires a very nice balancing of assets with indebtedness and expenses. Nothing of that kind was attempted in this case.

It appears from the record that previous to September, 1913, the secretary of the company had been in the practice of paying dividends upon the preferred stock without any formal resolution or declaration by

the board of directors authorizing him to do so. These payments had been reported each year to the stockholders at their annual meeting, and no objection to the practice had been expressed. The plaintiff seems to claim some kind of support for this action from that method of paying the dividends. But we cannot see how he is to get any benefit from it. The payments were unauthorized, but, where stockholders have thus actually distributed profits by unanimous consent, they may be estopped from asserting any claim to recover them back. *Barnes* v. *Spencer & Barnes Co.*, 162 Mich. 509 (127 N. W. 752, 139 Am. St. Rep. 587). An irregular practice of this kind cannot be held to abrogate the well-settled and essential rule of law that dividends must be determined upon and declared by the board of directors before a stockholder can maintain an action at law for their recovery.

It also appears that a comparatively small portion of the preferred stock, the exact amount not being shown, had been sold by the company under what the secretary called a guaranty. The certificates issued for the preferred stock thus sold were like all of the other certificates of preferred stock, and the so-called guaranties were contained in papers separate and distinct from the certificates. These guaranties consisted of promises, in substance, to resell the stock for the purchaser within a certain limited time if he should so desire. Some of these promises were signed by the company, and others by various parties connected with the company. The secretary testified that these stocks so sold under a promise to effect a resale had always been considered by the company as of the nature of loans, and that in consequence thereof dividends were paid upon these stocks in September, 1913, and in March, 1914, when they were not paid upon the other preferred stock. It is urged by the plaintiff that such payment of dividends upon the so-called guaranteed

stock ought to be treated as a declaration of dividends upon the preferred stock generally. It is true that dividends must be pro rata and equal upon all stock of the same class. And it is also true that these promises of resale did not at all affect the character of the stock promised to be resold. It was still simply preferred stock and of the same class as the other preferred stock. But in this case there was no resolution. by the board of directors directing the payment of these dividends upon the so-called guaranteed stock, and, so far as the record shows, the dividends were paid without authority. An unauthorized payment of dividends to a few preferred stockholders cannot be held equivalent to the declaration of a dividend in favor of all preferred stockholders.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.

This case, having been submitted on briefs without oral argument, was reassigned after the death of Justice MCALVAY.