## Western Foundry Company, Appellee, v. Albert G. Wicker, Jr., Appellant.

### Gen. No. 44,348.

108

Opinion filed June 23, 1948.   Rehearing denied July 9, 1948.   Released for publication July 12, 1948.

KINNE & SCOVEL, of Chicago, for appellant; HARRY C. KINNE, SR. and HARRY C. KINNE, JR., both of Chicago, of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellee; JAMES A. SPROWL and CHARLES J. O'LAUGHLIN, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action for a declaratory judgment (Chap. 110, Par. 181.1, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 104.057(1)]) establishing the validity of an amendment, to a corporate charter, canceling accumulated unpaid preferred stock dividends. A decree was entered granting the declaratory relief and ordering plaintiff to pay the defendant, under his counter claim, dividends which had been declared under the amendment. Defendant has appealed.

Plaintiff was incorporated in Illinois in 1892. In 1925 it was reorganized with 6,000 preferred shares, par value of $100 each and 60,000 common shares with par value of $10.00 each. Defendant owns 100 shares of plaintiff's preferred and 777 shares of common stock. No dividends were paid on the preferred stock after 1931, nor on the common after 1929. On July 1, 1941, plaintiff, though solvent, had an operating deficit of $204,893.03. Upon due notice a special stockholders' meeting was held December 12, 1941. Defendant was not present in person or by proxy. Except for him all owners and holders of stock consented to an amendment which reduced the authorized common from $576,040 to $288,020 and the par value from $10 to $5; canceled all dividends unpaid on the pre-

ferred stock on December 31, 1941 and all rights therein; and provided for a special preferred dividend of $2 and eliminated the cumulative feature of the preferred. This was done to eliminate the deficit and permit resumption of payment of dividends. Seventy-two dollars per share had accumulated on the preferred at the time of amendment.

Defendant frequently objected that the amendment was void as being in contravention of his rights as preferred stockholder; demanded payment of the accumulation before December 12, 1941 of the preferred stock dividends; and consistently refused to accept dividends under the amendment. In his counter claim defendant asked judgment for $7,200 for accumulated dividends with 5 percent interest since the date of the amendment; 7 percent preferred dividends since 1941, plus all dividends declared on the common stock since that time; 5 percent on the amounts represented on the dividend checks, under the amendment, sent him and returned by him; and such other amounts as should be found due him.

The issues made by the pleadings were: Was the defendant guilty of laches; was the amendment valid and effective to cancel the accumulated dividends due defendant; and was the defendant entitled to interest?

The Declaratory Judgment Act was passed in 1945. Plaintiff began this suit in April 1946. Defendant had refused to bring action before that time at plaintiff's request. March 25, 1947, plaintiff moved for summary judgment. The motion and accompanying affidavit show that the vote was 55,182 shares of common stock and 5,298 shares of preferred for the amendment and no votes against; that a letter of defendant was the only objection raised; that under the resolution carrying the amendment stockholders "waived and forever released" the accumulation and rights therein to the Corporation; and that the market value of the pre-

ferred stock has risen from about $20 per share at the time of the amendment to about $82 per share at the time of suit.

The counter affidavit filed by defendant's attorney, made no issue of the facts stated in plaintiff's affidavit. Questions of law only were presented to the trial court. The record does not show that the propriety of the summary judgment procedure was questioned. The decree based on the pleadings, affidavits and briefs found the equities with the plaintiff and declared the amendment legal and proper and binding on the stockholders including defendant and that the accumulated 7 percent dividends were waived. It found that the counter claim was without merit, with respect to the accumulated dividends and interest, but also found that defendant was entitled to judgment for the amount of dividends, without interest, declared subsequent to the amendment, in accordance with the prayer of the counter claim. Plaintiff was ordered to pay defendant $5,411.50.

There is no question of laches here. The counter claim is not an equitable action to compel the declaration of dividends but a legal action to recover dividends. *Cratty v. Peoria Law Library Ass'n*, 219 Ill. 516; *Davis v. Stevens-Davis Co.*, 192 Ill. App. 374. There was no showing made to the court that dividends on the original preferred stock were declared. The court was right in denying defendant recovery of the accumulated preferred dividends. The provisions of the charter and in defendant's stock certificates with respect to preferred stock dividends are not inconsistent with this conclusion. *Knight v. Alamo Mfg. Co.*, 190 Mich. 223, 157 N. W. 24; and *Field v. Lamson & Goodnow Mfg. Co.*, 162 Mass. 388, 38 N. E. 1126. This disposes of the question of interest on this item.

We turn now to a consideration of the declaratory judgment. The pertinent part of the amendment adopted at the December 1941 meeting provided, "All

dividends of the preferred stock of the corporation accumulated and unpaid on December 31, 1941, and all right in or to the same, are hereby waived and forever released unto the corporation by the holders of said preferred stock of the corporation. A special dividend of Two Dollars ($2.00) per share shall be paid on the preferred stock during the month of December 1941.'' Plaintiff relies for validity of the amendment on the provisions of the charter.

Under the charter defendant was entitled to 7 percent annual dividends on the preferred shares. They were made cumulative without interest and the accumulation was payable before any common stock dividends. So long as any preferred was outstanding, a two-thirds vote of that preferred was necessary to alter or change the preferences of or provisions respecting the preferred; to create or issue prior preferred or additional preferred on a parity; or to create or issue any stock having such priority or parity. Subject to these limitations the rights and preferences of preferred stockholders could be changed. These provisions were printed on the stock certificates. The parties agree that the charter and the stock certificate represented a contract between the State and the Corporation; between the Corporation and the stockholders; and between the stockholders themselves. *Kreicker v. Naylor Pipe Co.*, 374 Ill. 364, 29 N. E. (2) 502.

It is conceded by the defendant that the disputed amendment was effective to change the preferences for the future. His objection is as to the retrospective effect of the amendment. He says this could not be done to affect his stock without his consent. Plaintiff argues that the consent was given by him through his acceptance of the stock certificate carrying the pertinent provisions of the charter.

Corporations are creatures of the States. *Craig v. Sullivan Machinery Co.*, 314 Ill. 334, 176 N. E.

(2) 353. Legislatures have the inherent plenary power to create corporations and to confer the corporate powers and impose the conditions under which the powers may be exercised. 18 C. J. S. 406. Corporations have not the natural rights or capacities of natural persons, (19 C. J. S. 369), but only such powers as are expressly or impliedly conferred by the charter. *Harmony Way Bridge Co. v. Leather,* 353 Ill. 378, 187 N. E. 432. No act of the corporation can enlarge upon its own powers. The same authority is necessary for amendment as for the original incorporation. *Kresin v. Brotherhood of American Yeoman,* 217 Ill. App. 448. The situation is different in England where corporations are considered to have all the powers of a natural person except where a statute provides otherwise. *National Ass'n of Public Accountants v. United States,* 292 Fed. 668. The foregoing elemental propositions weaken the force of English cases (In Oban, etc. 5 Session Cases p. 1140; In Welsbach, Ltd. Vol. I Law Reports, Chancery Div. 1904, page 87; *Last v. Buller,* Vol. 36 Times Law Reports p. 35) cited by plaintiff. The courts in those cases refused to disturb amendments, under broad charter powers, canceling accrued unpaid dividends. In the *Welsbach case* the court said that since there was no legislative limitation, the company could provide "for any modification." In the *Last case* the court said that the cancellation of the arrearage was a question for the shareholders and not for the court.

Since the powers in the charter cannot exceed those granted by the legislature, we must turn to the statutes. The 1919 General Corporation Act, Chap. 32, Smith Hurd's Ill. Rev. Stats. was effective in 1921 when plaintiff was incorporated. The Business Corporation Act of 1933, Chap. 32, Pars. 157; 1–157: 167 Ill. Rev. Stats. was in effect when the amendment was made. The 1919 Act provided for amendments chang-

ing the ". . . . character, class or preference of the series of capital stock . . ." (Sec. 59) upon a two-thirds vote (Sec. 62) and provided that no change in the preference shares should be contrary to the charter provisions creating that stock. These provisions were repealed by Section 167 of the 1933 Act. Section 52 of the 1933 Act gives general amending "power as may be desired" with the limitation that, as amended, the charter should contain only such provision as might be lawfully in an original charter granted at the time of amendment. The general amending power was further limited in Sec. 52 by the proviso that where a change or reclassification of shares is to be made, the charter as amended may contain only such provisions as may be necessary to effect such change or classification "as may be desired and is permitted by this Act." The section then particularizes, without limiting the general power, 12 changes permissible with respect to stock. Among these are "(g) . . . to change the preferences . . . and special or relative rights in respect to all or any part of its shares issued or unissued." Section 53 provides, among other things, that where shares are entitled to vote as a class, two-thirds of the outstanding shares of each class entitled to vote as a class is required for the proposed amendment. Section 54 provides that shares shall be entitled to vote as a class when the amendment would "(d) change . . . preferences . . . special or relative rights on the shares of such class."

█ The powers given in plaintiff's charter and on the certificates followed generally the statutory provisions. They could not be broader. There is no express provision giving corporations power to cancel accumulations of preferred undeclared dividends. The general amending power with respect to preferred shares is limited to what is permitted in the act. If the power to do what was done by Amendment here is

given it must be in the permission granted to change preference and special or relative rights in respect of preferred stock.

Since the required two-thirds approval was obtained, the preferences and special rights could be altered and changed within the powers granted. Each share holder had so agreed in advance of the amendment. The question is whether plaintiff's preferred could be altered and changed so as to wipe out several years' accumulation of "undeclared dividends." Strictly speaking there can be no dividends until they are declared and voted by the authorized representatives of a corporation. *Willson v. Laconia Car Co.*, 275 Mass. 435. It is admitted that an amendment seeking to cancel vested rights would be invalid. The power to amend is subject to the fundamental mandate that property shall not be taken without due process of law. *McNulty v. Sloane,* 54 N. Y. S. (2) 253. There is no Illinois case cited and we have found none which decides this question. In *Kreicker v. Naylor Pipe Co.,* 374 Ill. 364, there was no express cancellation of accrued unpaid dividends.

The question before us is difficult and has been the subject of numerous scholarly articles. 57 Harv. L. Review 894; 26 Minn. L. Review 387; 40 Col. L. Review 633; 14 Corn. L. Q. 85.

In the State of New York the courts refused to approve amendments canceling accrued unpaid dividends (*Roberts v. Roberts-Wicks,* 184 N. Y. 257; *Davison v. Parke, et al.,* 285 N. Y. 500; *Wiedersum v. Atlantic Cement Products,* 261 App. Div. (N. Y.) 305), until the Stock Corporation Law was amended in 1943, giving the express power to cancel accumulated dividends. *McNulty v. Sloane,* 54 N. Y. S. (2) 253. An earlier amendment subsequent to the *Roberts case* gave no such power and the court of appeals said in *Davison v. Parke,* that the legislature must have known of the *Roberts case* when the amendment was made and yet gave no express power. In a footnote in the *McNulty*

*case* reference was made to the confusion existing in the Delaware law on the question.

The courts in Delaware have refused in the absence of express legislative authority to approve amendments canceling accrued unpaid dividends. *Morris v. American Public Utilities Co.,* 122 Atl. 696; *Keller v. Wilson,* 190 Atl. 115; *Consolidated Film Industry v. Johnson,* 197 Atl. 489. The *Keller case* is the leading case. Following the decisions noted, the Delaware Supreme Court upheld a merger, (*Federal Corporation v. Havender,* 11 Atl. (2) 331) which virtually extinguished accrued unpaid dividends. It held that the *Keller case* had no bearing on the question. The United States Circuit Court of Appeals, (3rd Circuit, Del.) said (*Hottenstein v. York Corp.,* 136 Fed. (2) 944); "Havender broke Keller's back" and that as a result what could not be done directly by amendment in Delaware can be done indirectly by merger.

██ The Delaware courts decided that under Delaware Rules of Statutory Construction legislative intention to give power of retrospective operation to such amendments must be free from doubt. The rule in Illinois with respect to the interpretation of statutes is similar to that in Delaware. Retroactive operation will not be presumed unless the language employed is so clear that it will admit of no other construction. *People v. McKinley,* 371 Ill. 190.

██ ██ May we not assume that the legislature of this State knew of the uncertainty of the law upon this question when the Business Corporation Act was adopted and with the decisions referring thereto, before its adoption and has known of the developments in the law on the subject since the adoption of the Act? We think that, had it intended to empower corporations to wipe out accrued accumulative dividends by charter amendment, it would have stated so plainly, as the New York legislature did in its amendment of 1943. The trend seems to be toward broader powers of corporate amendment with respect to cumulative

dividends. It seems to us that it is the legislative, and not the judicial function to decide the policy of this State where the interests of investors must be weighed against interests of the Corporation. We conclude that the amendment in question is void in so far as it sought to cancel the accumulated unpaid preferred dividends and had no effect upon the preferred shares of defendant, an objecting stockholder. The case of *McQuillen v. National Cash Register Co.*, 27 Fed. Supp. 639, on the situation presented in the opinion of the District Court does not militate against this conclusion.

Defendant contends not only that plaintiff had no right to cancel the accrued unpaid dividends on his preferred stock, and that it had no right to pay dividends on the common without first paying the accrued preferred dividends but he also claims the dividends paid on the common under the amendment. The amendment in question was designed to bring about a resumption of payment of dividends. The payment of the common stock dividends was related to the cancellation of the accruals upon the preferred shares and the reduction of the par value of the common. In its answer to the counter claim plaintiff, as counter-defendant, retendered the dividends declared since the amendment and made no issue of defendant's, as counter-plaintiff, right thereto. In view of our conclusion on the amendment, plaintiff, as counter-defendant, may wish to assert grounds of defense to the counter claim. We think that in view of the inconsistent claims by defendant, as counter-plaintiff, justice requires that plaintiff, as counter-defendant, be given an opportunity to do so. The decretal order on the counter claim is, therefore, reversed.

For the reasons given the decree is reversed and the cause is remanded for further proceedings on the counter claim consistent with this opinion.

*Reversed and remanded.*

BURKE, P. J., and LEWE, J., concur.