FRANZEN, Respondent, vs. FRED RUEPING LEATHER COM-
PANY, Appellant.*

*June 8—July 12, 1949.*

* Motion for rehearing denied, with $25 costs, on September 13, 1949.

For the appellant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles* and *Paul Noelke* of counsel, all of Milwaukee, and oral argument by *Mr. Noelke.*

*Samuel Goldenberg,* attorney, and *Harry A. Kovenock* of counsel, both of Milwaukee, for the respondent.

ROSENBERRY, C. J.   In this case the questions for decision can be presented more clearly and repetitious statements avoided by stating the facts rather than allegations of the pleadings and the findings of the court in extenso.

The defendant was organized under the laws of Wisconsin in 1894.   At a special meeting of its stockholders held in 1921, the articles of organization were amended to provide for 15,000 shares of eight per cent cumulative preferred stock of

the par value of $100 each, and 15,000 shares of common stock of the par value of $100 each. Dividends on the eight per cent cumulative preferred stock were payable on the first days of February, May, August, and November, and dividends were paid upon the issued shares through November 1, 1929. No dividends on the preferred stock were paid after that date.

After 1929 the defendant suffered severe operating losses. The net loss from its operations for the six years and three months ending March 31, 1935, was over $1,390,000. The dividend arrearage on its eight per cent cumulative preferred stock from November 1, 1929, to March 31, 1935, amounted to $473,543.02. On March 31, 1935, the corporation had a capital deficit of more than $435,000. There was a decrease in its net current assets in the period from December 31, 1928, to March 31, 1935, of over $1,900,000. On March 31, 1935, it owed $275,000 to banks, and had debentures outstanding of the par value of $691,000. The maturity of most of the debentures had been extended to April 1, 1940, and in the extension agreement defendant had covenanted among other things not to pay any cash dividends on any of its stock as long as debentures remained outstanding.

In April and May, 1935, H. M. Preston & Company of Chicago was engaged to study the financial condition of the corporation and to make suggestions for reorganizing its financial structure. On the basis of its analysis, counsel for H. M. Preston & Company, who was also counsel for the stockholders' advisory committee of the defendant which was then formed, drafted provisions for the six per cent preferred stock which is the subject of the controversy in this action, and a $10 par value common stock. The provisions for the six per cent preferred stock are printed in the margin.[1]

[1] The capital stock of said corporation shall be: 15,000 shares of six per cent preferred stock, and 58,820⅔ shares of common stock.

The holders of the six per cent preferred stock shall be entitled to receive dividends, when and as declared by the directors, either out of the surplus or net profits of the corporation, at the rate of but not

H. M. Preston & Company recommended a revision of the capital structure of the defendant, which was duly adopted by the stockholders. The articles of organization of the defendant were pursuant to the suggested plan amended to provide for 15,000 shares of six per cent preferred stock of the par value of $100 each and 58,820⅔ shares of common stock of the par value of $10 each.

The stockholders directed at the same meeting that the new stock be issued pursuant to the plan on the following basis: For each three shares of the eight per cent cumulative preferred stock then outstanding, (a) three shares of the six per cent preferred stock, and (b) to compensate for un-

---

to exceed six per centum per share, per annum, when earned, and no more, payable quarterly on the first days of January, April, July, and October in each year for the previous fiscal year ending on October 31, in any year, prior to any payment of dividends to holders of common stock in such year. The dividends upon the six per cent preferred stock shall be cumulative from November 1, 1939, or from the date the company is permitted to pay dividends and/or is released from the restrictions as to the payment of dividends contained in the indenture or supplemental indenture executed by the company securing the six per cent debentures issued by the company, or dividends are resumed subject to consent by the trustee under said indenture and supplemental indenture, only to the extent that the same have been actually earned and the difference between six per centum per annum and the amount actually earned for any such fiscal year shall not be deemed cumulative and no dividends shall be declared or paid on the common stock until such unpaid and accrued earned dividends due holders of the preferred stock shall have been fully paid and made up. Dividends payable to holders of preferred stock shall not be cumulative for any dividend period or periods unless the net earnings (as hereinafter defined) of the corporation have been sufficient in amount to permit the directors to declare such dividends and any deficiency thus accruing shall not become cumulative. When all current and accrued earned dividends shall have been paid to holders of the six per cent preferred stock, the directors may declare dividends on the common stock payable then or thereafter, out of any remaining surplus or net profits available therefor.

The holders of the six per cent preferred stock shall have no voting power and voting power shall be vested in the holders of the common stock exclusively, the holders thereof being entitled to one vote for each share held.

The six per cent preferred stock or any part thereof, as selected by the directors as to amount, in accordance with the provisions of the

paid dividends and modification of the preferences of the old preferred, one additional share of six per cent preferred stock and four shares of $10 par common stock; and for each share of $100 par common stock then outstanding, three shares of $10 par common stock.

The articles of organization, as amended, provided that the holders of the six per cent preferred stock were entitled to receive dividends at the rate of, but not to exceed, six per cent per share per annum when earned, during a fiscal year ending on October 31st, payable quarterly on the first days of January, April, July, and October in the subsequent year. The articles provided that dividends on the six per cent preferred stock were cumulative only from November 1, 1939, or a date dependent upon contingencies under the corporation's debenture indenture. The difference between six per cent and the amount actually earned for any fiscal year was, under the articles, not cumulative.

The amended articles provided further that the six per cent preferred stock or any part thereof was *subject to redemption on any dividend date on or after the first day of May, 1936, at $105 per share, together with accrued earned dividends due thereon.*

---

articles of incorporation, shall be subject to redemption on any dividend date on or after the first day of May, 1936, at one hundred and five dollars ($105) per share together with accrued earned dividends due thereon.

In the event of any liquidation, dissolution, or winding up of the corporation, whether voluntary or involuntary, before any amount shall be paid to holders of the common stock, the holders of the six per cent preferred stock shall be entitled to be paid the par value of their shares in addition to any unpaid accrued earned dividends and the current dividends due thereon before any remaining assets shall belong to or be distributed to the holders of the common stock.

The term "net earnings" as used herein shall be defined as the amount remaining in each fiscal year after deducting from the gross income of the corporation all operating expenses, losses, taxes, sinking-fund payment, proper expenditures for maintenance, insurance, all interest and setting up adequate reserves, including reserves for depreciation and property retirement.

The corporation did not earn dividends on the six per cent preferred stock in any year prior to the fiscal year ended October 31, 1941. In each of the fiscal years ending October 31, 1941, to October 31, 1947, inclusive, the earnings were in excess of six per cent on the preferred stock. Prior to January 20, 1948, the directors had declared and the corporation had paid all dividends then payable on the six per cent preferred stock.

On January 20, 1948, the corporation notified its six per cent preferred stockholders that the six per cent preferred stock would be called for redemption on April 1, 1948, at the price of $106.50 per share, "being $105 plus a sum equal to the accrued earned dividends due thereon to and including April 1, 1948, in the amount of $1.50 per share." On January 27, 1948, the board of directors of the corporation passed a resolution (set out in margin[2]) 'calling all of the issued and outstanding six per cent preferred stock for redemption on April 1, 1948. Notice of redemption was sent to the stockholders on February 15, 1948.

The plaintiff contends and the trial court held that there must be added to the call price of $106.50 per share named by the defendant, (1) the quarterly dividends which would have been payable on July 1 and October 1, 1948, by reason of the 1947 earnings, in other words, $3 per share, and (2) an additional dividend of $2.50 per share by reason of earnings in the first five months of the year ending October 31, 1948.

---

[2] Now therefore be it resolved, that this company call for redemption all of its issued and outstanding six per cent preferred stock on April 1, 1948, being a quarterly dividend date for the preferred stock, at the redemption price thereof to wit: $105 per share together with the sum in the case of each full share so-called equaling the accrued earned dividends thereon from the date on which the dividends on such share became cumulative to and including the date fixed for redemption less the aggregate of all dividends theretofore paid thereon; . . .

Stated more briefly, the defendant contends that the call price should be $106.50 per share, while the plaintiff contends that the call price should be $112 per share.

From the statement of facts it appears that the following questions are presented for decision:

(1) Under the terms of the articles as amended, on what date is the preferred stock of the defendant corporation subject to redemption?

(2) Must the redemption price on the second quarterly dividend-payment date in a year include the dividends which would have been payable on July 1 and October 1, 1948, as well as those payable on January 1 and April 1, 1948?

(3) As a condition of redemption is the defendant required to pay six per cent per annum for the five months of the fiscal year beginning November 1, 1947, for the reason that the defendant had the use of the preferred stockholders' money during that period?

The first question we will consider is: Is the preferred stock under the provisions of the articles of incorporation subject to redemption only on the last day of a fiscal year, October 31st?

The language of the amended articles is: "The six per cent preferred stock or any part. thereof, . . . shall be subject to redemption on any dividend date on or after the first day of May, 1936."

From 1941 to 1947, inclusive, dividends were paid on the first days of January, April, July, and October, with few exceptions. A determination of what was meant by the term "dividend date" may be determined in part at least by the nature of a "dividend."

In *Estate of Gerlach* (1922), 177 Wis. 251, 256, 188 N. W. 94, it was said:

"It is fundamental that until profits of a corporation are distributed in the form of a dividend or otherwise the stock-

holder obtains no right or title thereto. Such profits belong exclusively to the corporation. They may be retained by the corporation and added to corpus."

This, as we understand it, is the general rule. The trial court disposing of this matter said:

"The court has no difficulty in arriving at what it considers a proper determination of the issues raised by the first cause of action in plaintiff's complaint. Such dividend must be deemed to have accrued and to be an incident to the stock when called for redemption regardless of when the dividend-payment dates were fixed."

This it seems to us involves an error. The fund out of which the dividend is paid is the surplus earnings of the company which the proper officers of the company allocate to stockholders in the shape of what is ordinarily referred to as a dividend. The fund out of which the dividend is to be paid accrues; but the dividend is what is to be paid to the stockholder.

While it is not stated in so many words, the effect of the decision of this court in *Hull v. Pfister & Vogel Leather Co.* (1940), 235 Wis. 653, 294 N. W. 18, is that the rights of the holders of various classes of stock are determined by the articles of incorporation and the general corporation laws of the state, which in fact form a part of the corporate charter of the corporation.

In this case neither the general law governing corporations nor the articles of incorporation prescribe when a dividend upon preferred stock shall be declared. The language already quoted provides that the preferred stock shall be subject to redemption on any dividend date, clearly indicating that there is more than one dividend date.

As the trial court said:

"Both the company and its stockholders in adopting the plan of reorganization in 1935 recognized the necessity of

waiting until the end of the fiscal year before determining whether the earnings of the company were sufficient to require payment of the six per cent preferred-stock dividend."

We can reach no other conclusion than that the company itself and its stockholders recognized that the four quarterly dividends payable on the first days of January, April, July, and October of each year were intended to make available in the form of payment the dividend which had been earned during the preceding fiscal year ending October 31st, on those dates. Those dates are the only dates which can properly be referred to as dividend dates. No other date referring to dividends is stated in the articles. The fiscal year ends October 31st, but dividends are not required to be declared on that date.

We arrive at a conclusion contrary to that of the trial court and hold that the words "dividend date" in the paragraph relating to the redemption of the preferred stock refer to the days on which the dividend was payable, that is, on the first days of January, April, July, and October.

We shall next consider question 2: Must the redemption price on the second quarterly dividend date in a year include the dividends payable on July 1 and October 1, 1948?

The articles provide that preferred stock "shall be subject to redemption on any dividend date on or after the first day of May, 1936, at $105 per share together with accrued earned dividends due thereon." It is the contention of the defendant that dividends payable out of the earnings of the year 1947 had not been declared covering the payments to become due on July 1 and October 1, 1948, that only those payable on January 1st and April 1st were due, and therefore the payments due on July 1st and October 1st should not be included in the redemption price.

It is well established that as soon as a dividend is lawfully and fully declared out of surplus profits the corporation be-

comes indebted from that moment to each stockholder for the amount of his share, and the stockholder may recover it in an action against the corporation. See 11 Fletcher, Cyc. Corp. (perm. ed.), p. 786, sec. 5322, and cases cited. Many additional cases are also cited in the 1949 cumulative supplement. See also *Zinn v. Germantown Farmers' Mut. Ins. Co.* (1907), 132 Wis. 86, 111 N. W. 1107.

The provision in the articles relating to the retirement of the preferred stock is in effect a contract between the issuing corporation and the preferred stockholders, and as already indicated those provisions determine the rights of the holders. *Western Foundry Co. v. Wicker* (1948), 335 Ill. App. 106, 80 N. E. (2d) 548.

Referring now to the articles already set out the preferred stock "shall be subject to redemption on any dividend date on and after the first day of May, 1936, at $105 per share together with accrued earned dividends due thereon."

The question for decision is: Were the dividends payable on July 1 and October 1, 1948, due? Dividends covering those dates had not been declared at any time before the preferred stock was called for retirement. The funds out of which the directors might have declared those dividends remained in the treasury of the defendant unallocated to the holders of the preferred stock. A preferred stockholder cannot maintain an action at law for a dividend which has not been declared even though it has been earned and is accrued. *Knight v. Alamo Mfg. Co.* (1916), 190 Mich. 223, 157 N. W. 24; 6 A. L. R. 789, Anno. p. 832; 18 C. J. S., Corporations, p. 666, sec. 235.

This for the reason that until the dividend is declared the earned and accrued profits are the property of the corporation. The remedy of the preferred stockholder, if any, is in equity. *Spear v. Rockland-Rockport Lime Co.* (1915), 113 Me. 285, 93 Atl. 754; same case, 6 A. L. R. 793, Anno. p. 834.

In this case the rights of the preferred stockholder are governed by the provisions of the charter. Not having been

declared the dividends were not due in a legal sense. By the express terms of the charter they were not to become due in the sense of being payable until the dates named. Not having been declared they were not due in the sense that they were owing. *Wyman v. Kimberly-Clark Co.* (1896), 93 Wis. 554, 67 N. W. 932.

Not being payable or owing, dividends payable July 1 and October 1, 1948, should not be included in the call price. Until a dividend is declared it cannot in any legal sense be said to be owing or due. The preferred stock having been called as of April 1, 1948, and the dividends to that date included in the call price, the rights of the preferred stockholders do not extend beyond that date. They have no right, legal or equitable, to dividends not due on or before April 1, 1948.

We now come to the consideration of question 3 : As a condition of redemption, is the defendant required to pay six per cent per annum for the five months of the fiscal year beginning November 1, 1947?

It appears that the earnings of the appellant have been sufficient since 1941 to pay the dividend upon the preferred stock many times over. The last year's net earnings are said to have been forty times more than the dividend on the preferred stock.

In its opinion the trial court said further :

"The instant controversy, however, involves a full and final termination of the rights of plaintiff as a stockholder in the defendant corporation. A final accounting is required—a final settlement, and on such final accounting the conclusion the court has reached as to the plaintiff's first cause of action, stated in simple terms, is that the plaintiff is entitled to receive dividends for such period of time during which the corporaton had the use of plaintiff's capital and the defendant corporation's earnings were sufficient to require payment of the dividend on its preferred stock."

This conclusion entirely ignores the well-established rule of law that the rights of preferred stockholders are to be de-

termined in accordance with the applicable provisions of the corporate charter. If and when the defendant decides to redeem the preferred stock it may do so in accordance with the provisions of the charter without regard to how long the company has had the use of the preferred stockholders' money. What is required is adherence to the provisions of the charter instead of an accounting. The conclusion of the trial court that the plaintiff is entitled to what amounts to interest on the par value of his stock for the five-month period between October 31, 1947, and April 1, 1948, is supported by no provision of the charter of the corporation; it amounts to interest on the preferred stock which is directly forbidden by sec. 182.05, Stats., which provides:

"The capital stock of every corporation, divided into shares, shall be deemed personal property. No stock shall bear interest."

It is considered, therefore, that the trial court was in error in holding that the defendant be required to pay an additional $2.50, being six per cent for five months on the par value of the preferred stock.

It appearing that the call price includes all that is due the holders of the preferred stock on April 1, 1948, the plaintiff is not entitled to the relief prayed for in his complaint and awarded him on the trial.

*By the Court.*—The judgment appealed from is reversed and the cause is remanded to the trial court with directions to enter judgment dismissing the plaintiff's complaint on the merits. Defendant to recover costs in this court.

The following opinion was filed September 15, 1949:

Hughes, J. (*dissenting on motion for rehearing*). The entire contract indicates an intention of the parties to place an obligation upon the corporation to pay a dividend for any year during which the earnings were sufficient to warrant such payment of six per cent. I am of the opinion that while the con-

tract provided that the directors might make the dividend payment in four instalments in the year following such earnings, the call of the stock, in and of itself, accelerated the obligation of the directors to declare the dividend for the preceding year. The trial court was correct in holding that the corporation was liable to the plaintiffs for the balance of the dividend which had been earned the preceding year.

"Where the directors have actually declared a dividend on preferred stock so as to create a debt due by the corporation to the preferred stockholders, they may maintain actions at law against it to recover the same; and even without declaration of a dividend an action at law has been allowed in some cases on the contract to make a dividend where it appeared that there were net earnings available for the purpose of paying the dividend; but by the weight of authority the relation of debtor and creditor does not exist between a corporation and a preferred stockholder until a dividend has been declared, see *supra,* sec. 228, and until then an action at law will not lie. Manifestly, such an action does not lie where the nature of the contract or its judicial construction is such as to leave the question of the propriety of declaring the dividend to the discretion of the directors.

"Preferred stockholders, however, have a remedy in equity. The contract which gives them a right to the dividend out of the net earnings impresses any net earnings in the hands of the directors, for the particular year, with a trust in their behalf, to the extent required by the terms of the contract, and if the directors refuse to perform that trust by making the distribution, a court of equity will obviously, in a suit in which the parties in interest are made defendants, compel them so to do. However, this is not so where the contract, as judicially construed, leaves the question of declaring and paying the preferred dividend to the discretion of the directors and it cannot be said that their discretion has been abused. In any case, no recovery can be had under a complaint not averring that there were in the hands of the corporation earnings or profits sufficient to pay dividends." 18 C. J. S., Corporations, p. 666, sec. 235.

It appears clearly from the entire contract that the right of the preferred stockholders to the dividend was dependent upon

earnings in any one year sufficient to pay it. The time of payment during the following year was discretionary with the directors. That discretion, however, is not broad enough to defeat the right completely. It would appear cumbersome to require the stockholders to bring an action in equity to compel the declaration before the obligation was recognized as due.