## Hornblower et al. *v.* Austin, Appellant.

Argued December 14, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*F. B. Holmes,* for appellant.

*George Garrison Shafer,* for appellee.

OPINION BY STADTFELD, J., February 1, 1934:

This is an appeal by defendant from the order of the lower court entering judgment for want of a sufficient affidavit of defense.

Plaintiffs brought an action in assumpsit against the defendant for the sum of $193.40 with interest from June 24, 1929, being the proceeds of sale of certain stock rights in the Chesapeake Corporation, received by the defendant.

The facts are not in dispute.

On May 10, 1929, and prior thereto John M. Austin, the defendant, was the owner of record of ten shares of stock of the Chesapeake Corporation and on that day he sold the said ten shares and delivered the certificate through the Stroudsburg National Bank and its correspondent, Cassatt & Company, to the plaintiff.

On June 15, 1929, the defendant received a subscription warrant of the said corporation authorizing him to subscribe for five additional shares, the said warrant being one of a number which were issued to holders of record of stock of the said company at the close of business on May 22, 1929, and the rights to subscribe for stock under said warrant expired on June 24, 1929.

On June 15, 1929, the said stock as aforesaid sold to plaintiffs was still standing in the name of defendant, the plaintiffs having failed to register their names as owners thereof. On or before June 23, 1929, defendant sold and delivered the subscription warrant and rights through his agent, Stroudsburg National Bank, and received the sum of $193.40.

The affidavit of defense admits the averments of the statement of claim, except the averment that de-

fendant was not the owner of the said rights nor the proceeds thereof on the date when sold. Under the head of "new matter" defendant avers that immediately upon receipt of said warrant the defendant reported its receipt to the Stroudsburg National Bank, who in turn advised Cassatt & Company, their correspondent, who stated that the defendant was not entitled to the warrant, but advised that he should hold it until it was claimed by Cassatt & Company, or some other broker, and the defendant held the warrant until the day before its expiration, June 23, 1929, and sold the rights so issued to him, being a stockholder of record on May 22, 1929, through the said National Bank and received the sum of $193.40; that the plaintiffs had not transferred on the books of the company for nearly a year their ownership of said stock, and the defendant's name continued to appear on the books of said company as late as April 13, 1930.

Defendant claimed that on the 23rd day of June, 1929, when he sold the said warrant, the plaintiffs had no legal right to the same for the reason that they were not stockholders of record on the 22nd day of May, 1929, when the books of the corporation closed, and that if any equitable title to said rights ever vested in plaintiffs the same was lost by their own neglect in failing to have the stock properly transferred on the books of the company within a reasonable time.

The court, after argument, made absolute the rule for judgment in an opinion by Thomas, P. J., 56th Judicial District, specially presiding.

Appellant, in the brief on his behalf, has endeavored to inject into the case something which does not appear in the record; that is the date on which the Chesapeake Corporation adopted a corporate resolution authorizing an increase in capital stock and the issuance of rights. Not appearing in the record, and

not having been before the lower court, it can not be considered by us on appeal. We must take the record as we find it.

When defendant on May 10, 1929, sold the stock, he divested himself of all rights and interest therein. He was no longer a stockholder. The right to subscribe to additional shares was appurtenant to the stock which he had sold. The closing of the books of the company on May 22, 1929, was for the protection of the company, as it necessarily must depend on the record ownership in sending out the warrants for the right to subscribe. But as between the defendant and the persons to whom he had sold the stock, a different question arises. The warrants which he received, and the proceeds thereof when sold, were the property of plaintiffs. Defendant was no longer a stockholder and anything which he received was equitably the property of plaintiffs to whom he must account therefor. Defendant evidently knew that he was not entitled to the warrant before he sold the rights as he states in his affidavit of defense that he reported to the Stroudsburg National Bank the receipt of the warrant "which in turn advised Cassatt & Company who stated deponent (defendant) was not entitled to the warrant, but that he should hold it until it was claimed by Cassatt & Company or some other broker. The said Cassatt & Company further observed that evidently the certificate had not been transferred and that they had no way of tracing to whom the rights belonged until there had been a demand made for same."

These warrants, or right to subscribe, bear a close resemblance to dividends. While they contained an option to subscribe for stock, they had a cash value and belonged to the owner of the stock.

The rule applicable is set forth in 2 Cook on Corporations (5th Ed.) Sec. 539 as follows: "As between

the vendor and vendee of shares of stock, it is a settled rule that the vendee is entitled to all the dividends of the stock which are declared after the sale of the stock. Even though the transfer has not been recorded, the transferee has right to the dividends as against the transferer. The law, moreover, refuses to investigate the question when the dividend was earned. In contemplation of law the net profits are earned at the instant the dividend is declared. This rule is just, inasmuch as the accrued profits and expected dividends enter into the value and price at which the stock is sold."

Likewise in 14 Corpus Juris, 818. "As between successive owners of shares of stock in a corporation, the general rule is that the dividends belong to the persons who are the owners of the stock at the time they are declared."

The similarity between a subscription warrant or rights and a dividend appears in the opinion in Rose v. Barclay, 191 Pa. 594: "A dividend is that portion of the profits and surplus funds of a corporation which has actually been set apart by a valid resolution of the board of directors, or by the shareholders at a corporate meeting, for distribution among the stockholders, according to their respective interest, in such a sense as to become segregated from the property of the corporation to become the property of the shareholders distributively. It is a matter of no difference whether the dividend is declared in stock or paid in cash and thereafter converted into stock by the shareholders; in either event it is a distribution of the surplus profits of the corporation."

In Coleman v. Columbia Oil Co., 51 Pa. 74 a stockholder in a corporation sold a large percentage of his shares and sued the company for his pro rata of a stock dividend arising out of a transaction made while

he was the owner of all his shares, but declared after he had assigned the major portion of his shares.

The court decided that since he had sold his shares at the market price which reflected or should have reflected the true value of the shares, the purchaser of his shares was entitled to the dividend rather than he himself.

Likewise, in Corgan v. George F. Lee Coal Co., 218 Pa. 386: "The sale of the stock of a corporation carries to the vendee, the right to all dividends thereafter declared, and this is the case, although the profits from which such dividends have been declared, may have accrued prior to the sale of the stock."

On the question of title as between the vendor and vendee, many cases have been collated and discussed in 60 A. L. R. 708, among which are the following: "In Farmers' & M. Nat. Bank v. Mosher (1901), 63 Neb. 130, 88 N. W. 552 (affirmed in (1904), 68 Neb. 724, 100 N. W. 133), it was stated that it is a well-settled rule of law that, as between the vendor and vendee of shares of stock, the vendee is entitled to all the dividends on the stock which are declared after the sale of the stock, regardless of whether the transfer has been made upon the books of the corporation.

"So, a transfer unrecorded on the books of the company has been held to be good *as between the parties,* although the corporation was warranted in paying the dividends to the holder of the shares on the stock books of the corporation, where it does not appear that notice of the transfer of ownership had been given to the corporation: Richter v. Light (1922), 97 Conn. 364, 116 Atl. 600.

"And although the transfer of shares has not been recorded, the transferee has the right to the dividends as against the transferer, since the right to the dividends equitably belongs to the owner of the stock on

the day it is declared: Houser v. Richardson (1901), 90 Mo. App. 134.''

The cases on which appellant relies are those in which the controversy arose between the company and the stockholder who had not had the transfer of ownership entered on the books of the company. They necessarily have no application to the instant case which involves a dispute between the vendor and vendee.

The question of laches does not arise. Defendant has in no manner been prejudiced by the alleged delay in asserting plaintiffs' rights. All that plaintiffs claim is the amount realized by defendant from the sale of the rights on June 23, 1929, with interest from March 24, 1930, when plaintiffs' demand was refused by defendant. All that plaintiffs seek is that which was their own and which defendant retained without color of right.

The assignments of error are overruled and judgment affirmed.