O'CONNOR OIL CORPORATION, Appellant, v. WARBER, Respondent.

*April 12—May 10, 1966.*

641

For the appellant there was a brief by *McLeod, Donohue & Colwin* of Fond du Lac, and oral argument by *Raymond R. Colwin.*

For the respondent there was a brief by *Worthing, Schneider & Mickiewicz* of Fond du Lac, and oral argument by *John W. Mickiewicz.*

BEILFUSS, J.   The issues are: (1) Was parol evidence admissible to vary or explain the terms of the written note, and (2) are the findings of the trial court against the great weight and clear preponderance of the evidence.

The first issue must be resolved against the plaintiff-appellant, O'Connor.

The obligation of Warber was to pay the $1,200 "on demand when sales agreements are terminated." The written terms of the note, without explanation, do not identify the agreement or agreements, whether they were written or oral, nor their conditions of breach or dates of termination.

The parol-evidence rule prohibits the use of oral testimony of prior or contemporaneous negotiations to vary the terms of a written instrument complete upon its face. There are several exceptions to the parol-evidence rule, one being that parol evidence can be used to explain an ambiguous term of the written instrument:

"A word or term in a contract to be ambiguous must have some stretch in it—some capacity to connote more than one meaning—before parol evidence is admissible." *Conrad Milwaukee Corp. v. Wasilewski,* ante, p. 481, 141 N. W. (2d) 240.[1]

---

[1] Also see *Estate of Jankewicz* (1966), 29 Wis. (2d) 713, 139 N. W. (2d) 662; and *Estate of Gibbs* (1961), 14 Wis. (2d) 490, 111 N. W. (2d) 413.

If the sales agreements are to be considered contemporaneous documents, which is really the position taken by O'Connor, oral testimony was admissible and necessary to identify the documents and establish that these agreements are the ones referred to in the note.[2]

We have concluded that the trial court properly received oral testimony to identify the agreements referred to in the note. If the two written sales agreements executed on the same day were in fact the sales agreements referred to in the note, the three written instruments constituted a single transaction and should be construed together. Assuming the written sales agreements were in fact the agreements referred to in the note, a second-step parol-evidence problem arises. The question then becomes—Are the three written instruments construed together, complete and unambiguous upon their face? If they are, parol evidence should not be allowed to vary the terms. If the two written agreements were not the agreements referred to in the note or if they did not constitute the complete agreements (the note uses the plural word "agreements") then oral testimony could be used to show the true intention of the parties. What the "agreements" were became primarily a question of fact.

The parol-evidence issue at this stage becomes entwined with the second issue raised on appeal, namely, are the findings of fact of the trial court against the great weight and clear preponderance of the evidence?

The trial court did not file written findings of fact and conclusions of law but did file its written memorandum opinion. The facts as stated in the memorandum opinion may be accorded the weight of findings of fact.

[2] See *Martell v. National Guardian Life Ins. Co.* (1965), 27 Wis. (2d) 164, 133 N. W. (2d) 721; *Bank of Sheboygan v. Fessler* (1935), 218 Wis. 244, 260 N. W. 441.

*Morn v. Schalk* (1961), 14 Wis. (2d) 307, 313, 111 N. W. (2d) 80; *Kietlinski v. Interstate Transport Lines* (1958), 3 Wis. (2d) 451, 456, 88 N. W. (2d) 739; *Estate of Wallace* (1955), 270 Wis. 636, 639, 72 N. W. (2d) 383.

A portion of the trial court's memorandum opinion is as follows:

"It further appears that on the 26th day of June, 1959, the plaintiff's original $1200.00 paid for the equipment mentioned above was returned to the defendant in the form of a credit against charges shown on Invoice No. 06132, shown in the evidence as Defendant's Exhibit 3.

"Accordingly, it appears to this Court the original sale of the tanks and other equipment to the defendant by the plaintiff was set aside at the request of the plaintiff and the consent of the defendant. The defendant was then—under the documents executed, as mentioned above —obligated to use the plaintiff's products exclusively at the filling station. This he did. There is no question but what the defendant used the plaintiff's products pursuant to the Sales Agreements.

"At the close of the period covered by the Sales Agreements, the defendant left the premises and is now operating a filling station in the city of Fond du Lac.

"It is the contention of the plaintiff that after the station was closed, the defendant would be obligated to buy the equipment for the sum of $1200 mentioned in the note signed June 25, 1959, known as Plaintiff's Exhibit 1.

"This Court finds that the defendant did not terminate any Agreements. If there was any termination whatsoever, it was made by the plaintiff who drafted the Sales Agreements and provided for the approximate one year term during which the Agreements would be in effect. After the defendant left the premises, of course, it would be ridiculous for him to dig up the tanks and remove the same.

"Accordingly, this Court finds that the defendant did carry out the terms of the Sales Agreement. The plaintiff desired to have its products sold by the defendant. The defendant went through with these agreements. He did not terminate or violate the terms of the Agreements to sell the plaintiff's merchandise. The note in evidence, known as Plaintiff's Exhibit 1, was executed to insure

the defendant's carrying out the terms of the Sales Agreements. Since he carried out the terms of the Sales Agreements, he is not now obligated to pay for the tanks in question."

We have examined the entire record before us on appeal, including the testimony of the witnesses. We conclude that some of the crucial factual determinations as made by the trial court are not adequately supported by the evidence.

The trial court found "it appears to this Court the original sale of the tanks and other equipment to the defendant by the plaintiff was set aside at the request of the plaintiff and the consent of the defendant." This finding is inconsistent with the evidence. The only evidence of a rescission of the sale of the tanks is found in the testimony of the defendant Warber and in the coincidence that the purchase price, the note, and the credit on gasoline purchased, were all in the amount of $1,200. The defendant Warber did not at any time testify that the plaintiff O'Connor requested rescission of the sale of the tanks and other equipment. His oral testimony was that he asked that the sale of the tanks be set aside and that the $1,200 credit on gasoline purchased was a refund of the purchase price of the tanks. The testimony on behalf of the plaintiff O'Connor was that it refused to rescind the sale of the equipment and that the $1,200 note represented the $1,200 credit given to Warber upon an account due for the purchase of gasoline. The tanks were only a part of the equipment. There is no evidence that Warber ever complained of or offered to return the two other substantial items of equipment, the hoist and the air compressor. Further, there is no written evidence of any kind of the rescission of the sale of the equipment.

The trial court found that: "The defendant was then—under the documents executed, as mentioned above—obli-

gated to use the plaintiff's products exclusively at the filling station."

The "documents executed" were the two written sales agreements of June 25, 1959. One was for the Lamartine station and the other for the Fond du Lac station. Both agreements provided for the mutual obligation of the parties—Warber to buy and O'Connor to sell and deliver specified quantities of gasoline and diesel fuel, between a monthly minimum and maximum for a stated period of time. Nowhere in these written documents is it provided that the defendant Warber was obligated to use the plaintiff's products exclusively at either station. Warber's oral testimony was that the intent of the written agreements was that he obligated himself to purchase gasoline and diesel fuel from O'Connor and that he did in fact purchase these products exclusively from O'Connor for a period specified in the agreements.

The note used the plural word—"agreements." The defendant's claim is based upon one oral agreement. The two written sales agreements for gasoline and diesel fuel were executed on the same day as the note. They were contemporaneous written agreements; they did specify exact termination dates. A $1,200 credit was given to Warber on the next day, June 26th, for gasoline purchased. While it was not error to receive oral testimony to explain the written instruments, the written instruments themselves are to be accorded substantial weight in evaluating the whole of the evidence.

"Instruments executed together and related to a common transaction are to be construed together as to all persons chargeable with notice of their contents and their relation to each other." *Bank of Sheboygan v. Fessler, supra,* at page 247.

From our review of the entire record we are of the opinion that the finding of the trial court that the sale of the equipment was rescinded and that the note repre-

sented a penalty to be imposed upon the defendant in the event he did not exclusively purchase gasoline and diesel fuel from the plaintiff is against the great weight and clear preponderance of the evidence. The evidence does not reveal that either Warber or O'Connor breached the terms of the written sales agreements. Both agreements had a specified termination date and the note became due upon demand after those dates. In our opinion the plaintiff has clearly established the consideration for the note, the due date, demand and nonpayment, and is entitled to recover the face amount of the note.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff pursuant to the demand of the complaint.