MARSHALL & ILSLEY BANK, Executor, and others, Respondents, v. THE MILWAUKEE GEAR COMPANY, Appellant.

*No. 234. Argued March 4, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 1.)

"...

For the appellant there were briefs by *Bruce C. O'Neill* and *Cahill, Fox & Smith, S. C.,* all of Milwaukee, and oral argument by *Mr. O'Neill.*

For the respondent there was a brief by *Cook & Franke, S. C.,* attorneys, and *Robert E. Cook* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

ROBERT W. HANSEN, J. This opinion is limited to answering the three questions asked by the appeal and the motion for review.

*Question:* Did the bank, as trustee of the W. C. Kohls trust and executor of the estate of Walter C. Kohls, have any right to redemption of the second preferred stock shares by the gear company?

The trial court answered that it did, and we agree. The trial court in its opinion noted that the agreement between the parties provided that the rights of Walter C. Kohls under the agreement shall enure to the benefit of his executor upon his death. It found that, as executor of his estate, the bank "succeeded to the possession and ownership of his 3,310 shares for handling in the probate of his estate." It further held that the provisions of the agreement on this point were "clear, unambiguous, and need no construction or interpretation."

The gear company argues that the only rights which enured to the executor of his estate upon the death of Walter C. Kohls under the agreement were "the rights of Walter C. Kohls hereunder." Since the shares of stock had been transferred to the revocable trust earlier, when Walter C. Kohls died, he owned no stock, and no right to redeem such stock under the agreement. So his right to redeem under the agreement no longer existed. The heart of this argument is the contention that a right to redeem stock under an agreement is appurtenant to the stock much like an easement upon property. The company's contention is that when Walter C. Kohls assigned the stock to the revocable trust, he could not retain the contractual right to redeem because that either went with the stock or passed out of existence. (Actually, the company claims that such right vanished probably because, if it went to the trust upon the transfer, arguably the bank as trustee of the trust, named as residuary legatee under the will, could as trustee and residuary legatee still exercise the option.)

The right of Walter C. Kohls to redeem the 3,310 shares of stock arises from the contractual agreement between him and the company. As the trial court did, we look to that agreement to determine the nature of the rights that agreement gave him. We see the right to redemption as created by the agreement to be personal to Walter C. Kohls, and not appurtenant to the shares of stock. The agreement speaks of the rights of the parties mentioned—Walter C. Kohls, Robert C. Kohls and Ethel E. Bau—to redeem the shares held by them. It is a right that, under the agreement, is not assignable without the company's written consent. It is this right to redeem that is to enure to the benefit of the executor, administrator or legatees of the estate of those mentioned. While the 3,310 shares of stock were placed by Walter C. Kohls in the revocable *inter vivos* W. C. Kohls trust, and the company issued stock certificates in the name of that trust, we do not see the personal right to redeem as either transferred to the trust or extinguished by such action. We do not see how, with Walter C. Kohls living and not joining the demand, the trustee of the trust could have exercised the option to redeem. We do not doubt that, if Walter C. Kohls had revoked his revocable trust, he could have exercised the option to redeem. That right to redeem, we agree with the trial court, was personal, not an appurtenance of stock ownership in the sense of being assigned or extinguished by transfer of title to the trust. Here the right to redeem was not assigned by the deceased to anyone during his lifetime and we agree that such right to redeem enured to the benefit of the executor upon the death of Walter C. Kohls.

Appellant company relies heavily upon a case in an eastern state where a shareholder had transferred away all his stock, but such transfer had not yet been recorded in the books of the corporation, and the former shareholder received and sold a stock subscription warrant sent him as owner of record of the stock. The court

there held that the right to the stock subscription warrant went, with the sale to the transferee who bought the stock. (*Hornblower v. Austin* (1934), 112 Pa. Super. 90, 170 Atl. 358.) That case involved a unilateral action by the corporation and an outright sale or full divesting of ownership on the part of the stockholder. The case before us involves, and this opinion deals with a situation where (1) the right involved derived from a contractual agreement of the parties; and (2) the transfer of stock was from the shareholder to a revocable, *inter vivos* trust he created and could terminate. Both facts distinguish the Pennsylvania case, and both support the reasoning and result reached by the trial court here on the point involved.

At the time of making its second demand for redemption of the stock, the bank, as trustee of the W. C. Kohls trust and residuary legatee under the will of the deceased, had assigned title to the 3,310 shares of stock involved to the executor, and, as executor of the estate of Walter C. Kohls, enured to the right to redeem such shares of stock given him under his contractual agreement with the gear company. As such executor it had the right to exercise such option to redeem, and the company was not entitled to reject the demand that the stock be redeemed at par value.

*Question:* Did the trial court commit prejudicial error in excluding parol evidence offered to show a condition precedent and latent ambiguity in the stock redemption agreement?

The trial court held that parol evidence, as offered by the defendant company, was offered to alter the terms of a written instrument and was inadmissible. We agree that it was inadmissible. The general rule on the admissibility of parol evidence concerning the terms of a written agreement has, in this state and by this court, been held to be:

"Parol evidence is admissible to alter the terms of a written instrument only when: (1) It does not contradict, vary, add to, or subtract from the terms of a valid written agreement, or (2) fraud, mistake, or accident are shown to be present. [Cases and authorities cited.] The written document pertaining to obligations assumed by each of the parties being set out with great detail and exactness, and being signed by both parties, is convincing that the effort and intention was to place within the four corners of the writing all that needed to be expressed in order to declare the minds of the contracting parties . . . to cover the whole field in the written contract. [Case cited.]" *Tees v. Lee* (1940), 234 Wis. 607, 610, 291 N. W. 792.

The defendant company seeks to fit its proffered parol testimony into two exceptions to the general rule: (1) The condition precedent exception; and (2) the latent ambiguity exception. The first provides parol evidence may be admitted ". . . not directed toward the contents of the agreement, but to establish a condition precedent, the happening of which was necessary before it became a binding contract. . . ." (*Kryl v. Mechalson* (1951), 259 Wis. 204, 206, 207, 47 N. W. 2d 899.) Under this exception, the parol evidence is admitted to prove the nonexistence of an agreement or, at least, that the writing in question never became binding and that it was to take effect only upon the happening of a subsequent event which never did happen. (*See: Gibbons v. Ellis* (1892), 83 Wis. 434, 53 N. W. 701; *Gilman v. Gross* (1897), 97 Wis. 224, 72 N. W. 885.)

However, the condition precedent exception does not stretch, accordian-like, to make admissible parol evidence to show a condition precedent to a promissor's duty of performance under a contract already made, where the duty is absolute under the contract, since this involves varying the terms of the contract, not negating its existence until a condition is met. (*See:* Simpson, *Contracts* (2d ed. 1965), p. 199, sec. 99.) Here parol evidence was

offered to establish that the right to redeem given, exercisable under the agreement "at any time, or from time to time," was orally agreed by Walter C. Kohls to be exercisable after Walter Kohls' death only in the discretion or control of Robert C. Kohls and also that the right to redeem granted would be exercised only if and after Ervin Borisch exercised his option to convert a portion of his noncumulative stock to cumulative stock. The offer of proof went not to the existence of a valid and binding agreement, but to prove that the right to redeem was to be exercisable, contrary to the provisions of the agreement, by someone other than prescribed by the agreement after Walter C. Kohls' death and, contrary to the provisions of the agreement, only after someone else had done something else. Such evidence clearly was an attempt to rewrite or alter the terms of the contract by parol evidence and was not admissible.

As to the admissibility of parol evidence to explain latent ambiguity in a written agreement, that exception to the general rule is not here applicable. Parol evidence is admissible to explain latent ambiguities (*O'Connor Oil Corp. v. Warber* (1966), 30 Wis. 2d 638, 642, 141 N. W. 2d 881), but such parol evidence ". . . must clarify an existing ambiguity and cannot establish an understanding in variance with the terms of the written document. . . ." (*Conrad Milwaukee Corp. v. Wasilewski* (1966), 30 Wis. 2d 481, 488, 141 N. W. 2d 240.) Under this exception, parol testimony is admitted to resolve an existing ambiguity, not to create one. Here the trial court found that the contract was not ambiguous in any respect, not patently or latently so. We affirm that finding of fact and agree with the trial court that: "Where there is no ambiguity in the contract, either in a literal sense, or when applied to the subject thereof, it must speak for itself entirely unaided by extrinsic matters. . . ."

*Question:* Was the estate entitled to dividends or contractual payments paid by the company to other holders of second preferred stock after the death of Walter C. Kohls?

The second cause of action alleged in the bank's complaint was for the payment of dividends, alleging that the company had made dividend payments after the death of Walter C. Kohls to all of the second preferred stockholders except the W. C. Kohls revocable trust and the estate of Walter C. Kohls. This claim of entitlement to payments or dividends as paid to other second preferred stockholders leads to a second written agreement between the parties entered into on November 9, 1965. By the terms of that agreement, the gear company and the second preferred stockholders agreed that:

"So long as there shall continue to be any Applicable Shares in existence, the Company shall, each fiscal quarter, either (1) declare and pay a regular quarterly dividend on all of its Second Preferred Stock then outstanding . . . or, (2) if no such regular dividend shall have been declared or paid with respect to any such quarter, pay, in the manner and upon the conditions specified below, to all Second Preferred Stockholders who are then owners of Applicable Shares a payment equal in amount to the regular quarterly dividend which would otherwise have been payable as aforesaid, to said Second Preferred Stockholders on the Applicable Shares then owned by them (hereinafter called a 'Contractual Payment'), as follows:"

As to the definition of "applicable shares" and, specifically as to the 3,310 shares of stock held by Walter C. Kohls, that written agreement provided:

"1 (c) In the case of any share now owned by Walter C. Kohls, the Applicable Period shall continue until such share shall cease to be registered in his name, or until the death of Walter C. Kohls, whichever of said events shall earlier occur."

Both appellant company and respondent bank see the issue as to payments made by the company, after the death of Walter C. Kohls, to other second preferred stockholders to be a question of whether such payments were (1) regular dividends, or (2) "contractual payments" under the agreement. The respondent bank argues that the payments were general dividends, as the minutes of the corporate meetings refer to them, and that, when such dividend is declared, ". . . the corporation becomes indebted from that moment to each stockholder for the amount of his share, and the stockholder may recover it in an action against the corporation. . . ." (*Franzen v. Fred Rueping Leather Co.* (1949), 255 Wis. 265, 273, 274, 38 N. W. 2d 517, 39 N. W. 2d 161.) Appellant company contends that the payments were intended to be and were in fact "contractual payments" as provided for in the agreement of the parties, with neither the court nor company ". . . necessarily bound or concluded by the language of any resolution in the ascertainment of the corporate intent. . . ." (*English & Mersick Co. v. Eaton* (D. C. Conn. 1924), 299 Fed. 646, 648.) If this is the litmus paper or test as to estate entitlement to payments as made to others, remand would be required to determine whether the payments were dividends or "contractual payments" made pursuant to the agreement, for the trial court did not deal with this difference or distinction in denying estate entitlement to its additional or second claim for damages. Instead the trial court held that, under the agreement of the parties, that the payment of dividends, as well as "contractual payments" as to the 3,310 shares of stock, were to cease "as of November 15, 1969, said date of death [of Walter C. Kohls] ; and the Company properly and legally paid no more of such after said death."

In construing and applying the agreement of the parties to any post-death estate claim for dividends, the trial court held:

"The intent of such provisions appears clearly, therefrom that it was intended that during the lifetime of the particular person, he or she was to receive dividends, and that upon death, such right terminated, and his or her estate was not entitled to any more. In other words, in connection with their consenting to the re-organization the fathers and the others named, were to receive income, in the form of dividends, during the respective lifetime of such person to take care of their lifetime needs or purposes which need or purposes ceased upon death. And, so the right terminated and was not passed on to or in his estate. This was a matter of agreement between the parties . . . ."

There is support for this construction of the agreement in the preliminary paragraphs of the agreement dealing with the intent of the parties, reading as follows:

"WHEREAS, it is contemplated that the Company's Common Stockholders and its Second Preferred Stockholders will vote their respective stockholdings in favor of a recapitalization of the Company . . . and

"WHEREAS, in consideration of the approval of said recapitalization by the Second Preferred Stockholders, the Company desires to assure the Second Preferred Stockholders that, for the periods and with respect to the shares of Second Preferred Stock herein specified, the Second Preferred Stockholders shall continue either (1) to receive regular quarterly dividends upon their Second Preferred Stock, or (2) to receive payments as required hereunder, all as hereinafter more specifically provided; . . ."

We concur in the trial court's construction of the agreement, and the intent of the parties it makes clear. Respondent bank, in its brief, asserts the applicable rule of law to be that ". . . *in the absence of any agreement to the contrary,* all persons who own shares of stock at the time a dividend is declared are entitled, as a matter of absolute right to share ratably in the dividend in proportion to their respective shares. . . ." (Citing Fletcher, *Cyclopedia of the Law of Private Corporations*

(1971 ed.), p. 778, sec. 5376.) We italicize for emphasis the qualifying statement to the rule, "in the absence of any agreement to the contrary," because here the trial court expressly found exactly such agreement to the contrary on the part of the contracting parties. Concurring in the construction given the agreement by the trial court, we affirm the trial court finding that the bank as executor or trustee was not entitled to dividend or "contractual payments" voted by the company on the 3,310 shares of stock involved, following the death of Walter C. Kohls.

*By the Court.*—Judgment affirmed.