In the Matter of EXCALIBUR AUTO-MOBILE CORPORATION.

EXCALIBUR AUTOMOBILE CORPORATION, Debtor–Appellant,

v.

Roosevelt V. ROBINSON, Respondent–Appellee.

No. 87–2861.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1988.

Decided Sept. 26, 1988.

---

Joseph C. Niebler, Niebler & Muren, S.C., Brookfield, Wis., for debtor-appellant.

James L. Fox, Abramson & Fox, Chicago, Ill., for respondent-appellee.

Before POSNER and COFFEY, Circuit Judges, and WILL, Senior District Judge.*

COFFEY, Circuit Judge.

Excalibur Automobile Corporation, Debtor–Appellant, applied to the bankruptcy court for an order to compel Roosevelt V. Robinson to advance it up to $900,000 in "interim" financing and to obtain a $1.9 million irrevocable letter of credit pursuant to the terms of written agreements signed by the parties. Alternatively, Excalibur requested authority from the bankruptcy court to permit the company to negotiate financing with other third parties without prejudice. The bankruptcy court rejected Excalibur's application to compel performance under the agreements, and the district court affirmed. Excalibur appeals, and we reverse and remand for further findings of fact.

I

Debtor–Appellant Excalibur Automobile Corporation is a Wisconsin corporation with its principal place of business in West Allis, Wisconsin. It manufactures Excalibur automobiles and is a wholly owned subsidiary of Excalibur Management, Inc., a holding company ("Excalibur Management"). Excalibur Management is also the corporate parent of Excalibur Marketing Corporation ("Excalibur Marketing") and Excalibur Sales, Inc. ("Excalibur Sales"). Only Excalibur Automobile Corporation ("Excalibur") is a party to this proceeding. Roosevelt V. Robinson is the chief executive officer of a car dealership, Robinson Cadillac/Excalibur, located in Atlanta, Georgia.

On October 30, 1985, Excalibur filed a Chapter 11 petition for reorganization in the United States Bankruptcy Court for the Eastern District of Wisconsin and, thereafter, continued business as a debtor in possession. After the petition was filed, Ray Besasie, an officer of Excalibur Marketing, contacted Robinson to advise him of

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

the filing of the reorganization petition. This led to informal discussions between Robinson and Excalibur concerning Excalibur's need for additional financing. The discussions included the possibility of the sale of Excalibur corporate stock to raise additional capital for the company. Excalibur hoped that a sale of stock would provide it with the capital necessary to propose a viable plan of reorganization to its creditors hopefully leading to plan confirmation by the bankruptcy court.

On November 6, 1985, Robinson, William Howard (an officer of a subsidiary of Equitable Life Assurance Society of the United States ("Equitable")); and the principals and legal counsel for Excalibur met in Milwaukee, Wisconsin, to discuss Robinson's possible investment in Excalibur.

The investment plan discussed at the November 6, 1985, meeting would have required Robinson to pay $2,500,000 to Excalibur and $600,000 to its stockholders in return for a majority of Excalibur's stock. At about the same time as the meeting, Excalibur gave Robinson several documents, including a confidential private placement memorandum,[1] a confidential investor questionnaire, and other financial information. Negotiations continued, and Excalibur prepared a draft agreement and forwarded it to Robinson.

At Howard's suggestion, he and the parties met again on January 28, 1986. This meeting was held at Equitable's offices in Atlanta, Georgia, and its purpose was to sign a detailed stock purchase agreement. As a result of discussions during the meeting, the parties reached and signed an agreement providing for Robinson's purchase of 51 percent of Excalibur. The terms of the signed agreement differed from earlier discussions and the initial draft agreement in that it provided for an equity injection of $1,300,000 rather than $2,500,000 and a payment to stockholders of $500,000 rather than $600,000. The signed agreement also required Robinson to purchase 40 Excalibur cars secured with a $1,960,000 irrevocable letter of credit.

In addition to being required to deliver corporate stock, the January 28 agreement required Excalibur to apply to the bankruptcy court for approval of a $900,000 convertible secured loan from Robinson to Excalibur. Excalibur, Robinson and the Marshall & Ilsley Bank of Milwaukee, Wisconsin ("M & I Bank"), were to be parties to the loan. The note evidencing the loan carried an interest rate of one percent plus the prime rate charged to M & I Bank customers, and it was to automatically convert to a portion of Robinson's stock purchase price upon closing of the stock deal.

The agreement contained a standard merger (integration) clause and a choice of law clause stating that Wisconsin law controlled the operation of the agreement. The agreement was duly executed by Excalibur, Excalibur Management, Excalibur Marketing, Excalibur Sales and Robinson. Neither Equitable nor any of its subsidiaries were signatories of the January 28, 1986, agreement, and it did not expressly condition Robinson's performance on his obtaining financing.[2]

By February 7, 1986, the bankruptcy court had approved the $900,000 loan, and William C. Stevens (executive vice president of Excalibur) and Robinson met in Chicago to execute the necessary loan documentation. M & I Bank agreed to subor-

---

**1.** The private placement memorandum was apparently drafted to exempt the stock sale from registration as required under the Securities Act of 1933. 15 U.S.C. § 77(a), *et seq.* To qualify for this exemption, all investors or their "purchaser representatives" must meet certain minimum standards. Basically, these standards measure either business sophistication or wealth and income. *See generally,* 17 C.F.R. 230.501–230.506 (Regulation D).

**2.** The January 28 agreement is a detailed, 26–page document referencing other attached agreements attempting to cover the legal water-front of the stock sale. For example, it sets forth "Steps to Accomplish Purpose," required the Excalibur group to merge within 30 days after confirmation of the plan of reorganization and contained provisions relating to representations, insurance, taxes and the continued employment of the principals of the Excalibur group. Robinson successfully negotiated several changes to the typed agreement at the meeting. These changes were handwritten, separately initialed by the parties, and made part of the agreement before it was signed.

dinate its existing security interest to Robinson's loan on the condition that Robinson provide an irrevocable letter of credit securing his purchase of the cars as called for in the January 28 agreement. Robinson then advanced $75,000 to Excalibur as an "initial draw" on the loan. This initial draw was in accordance with Excalibur's needs shown in the financial information previously provided to Robinson. Stevens also advised Robinson that, consistent with the same financial information used for purposes of the initial draw, a second draw of $110,000 would be required on or before February 21, 1986, to continue Excalibur's operations.

On February 20, 1986, Robinson told Stevens that he could not meet the $110,000 advance. Nonetheless, he did provide Excalibur an additional $20,000 the next day.

On February 24, 1986, Excalibur filed a motion to compel Robinson to comply with and perform the January 28 and February 7, 1986, agreements or, alternatively, to permit Excalibur to negotiate with other third parties for needed capital without prejudice. The bankruptcy court initially scheduled a hearing on February 28, 1986, but adjourned the matter at the request of the parties. An evidentiary hearing was ultimately held on April 17, 1986, and the bankruptcy court orally denied the motion on the record at the close of the hearing. The court ruled, without benefit of legal argument or briefing: (1) the January 28 and February 7 agreements were aleatory contracts; (2) Equitable's financing of Robinson was a condition precedent to his performance under the agreements; and (3) rescission of the agreements was Robinson's appropriate remedy.

 Excalibur appealed the bankruptcy court's denial of its motion to district court

pursuant to 28 U.S.C. § 158(a) as an appeal from the final order of the bankruptcy court.[3] The district court: (1) reversed the bankruptcy court's holding that the agreements were aleatory contracts[4]; (2) affirmed that parol evidence is admissible to establish the existence of conditions precedent; (3) affirmed the denial of the requested order to compel performance based on the existence of a condition precedent that Robinson's performance was dependent on his receiving financing from Equitable; and (4) determined that Robinson's advancement of funds did not waive the condition precedent.

The issues presented on this appeal are: (1) whether the bankruptcy court erred in admitting parol evidence to demonstrate the existence of a condition precedent; (2) whether the bankruptcy court erred in finding a condition precedent to the agreement; and (3) whether the district court erred in finding that Robinson did not waive the condition precedent by advancing funds in the total amount of $95,000. We review findings of fact under the clearly erroneous standard. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985); *In re Land Investors, Inc.*, 544 F.2d 925, 933 (7th Cir.1976).

## II

Excalibur argues that the bankruptcy court erred in admitting parol evidence to demonstrate the existence of a condition precedent to the agreements. We agree that it is settled Wisconsin law that parol evidence is generally not admissible where a contract is intended to be the final and complete expression of the parties' agreement.[5] *See, e.g., Kramer v. Alpine Valley Resort, Inc.*, 108 Wis.2d 417, 426, 321 N.W. 2d 293, 297 (1982) (where the court admitted evidence that defendant made oral

---

**3.** Therefore, the district court is constrained to accept the bankruptcy court's findings of fact unless they are clearly erroneous. Fed.R.Bk.P. 8013 (West 1987). Conclusions of law are reviewed *de novo. See In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985).

**4.** We can find nothing in the record that remotely suggests that Robinson asserted that the agreements were aleatory contracts. An aleatory contract is generally defined as a contract

that is dependent upon a fortuitous event. *Williston on Contracts* § 888 (1962). At oral argument Robinson's counsel conceded the agreements were not aleatory.

**5.** The parties agree that Wisconsin contract law controls the validity, interpretation and operation of the agreements herein. The January 28 agreement specifically provides that Wisconsin law controls. Moreover, Excalibur's principal place of business is in Wisconsin.

promises in *addition* to the parties' written lease which failed to provide for essential elements). Parol evidence is not admissible to "contradict, vary, add to, or subtract from the terms of a valid agreement." *Marshall & Ilsley Bank v. Milwaukee Gear Co.*, 62 Wis.2d 768, 776, 216 N.W.2d 1, 5 (1974).

In this case, parol evidence was admitted to establish that the agreements were subject to a condition precedent and not to vary the terms of the written agreements. Such use fits squarely within an exception to the general rule of exclusion. The exception specifically provides that:

> "parol evidence is admitted to prove the non-existence of an agreement or, at least, that the writing in question never became binding and that it was to take effect only upon the happening of a subsequent event which never did happen."

*Marshall & Ilsley Bank v. Milwaukee Gear Co., Id.* (quoting *Tees v. Lee*, 234 Wis. 607, 610, 291 N.W. 792, 793 (1940)).[6] *See also, Bultman v. Frankart*, 194 Wis. 296, 297, 215 N.W. 432, 433 (1927); *Paulson v. Boyd*, 137 Wis. 241, 247, 118 N.W. 841, 842 (1908).

Excalibur further contends that the merger clauses in the agreements establish that no conditions precedent to performance exist. Indeed, the Wisconsin Supreme Court has stated:

> "evidence of contemporaneous or prior agreements, written or oral, which relate to the same subject matter as the agreement in question is not admissible when the written agreement embodies written terms excluding additional understandings or agreements not contained in the writing, i.e., 'merger' clauses."

*In re Spring Valley Meats, Inc.*, 94 Wis.2d 600, 608, 288 N.W.2d 852, 855 (1980). Merger clauses couched in general terms, however, are held *not* to prohibit the introduction of parol evidence establishing conditions precedent in Wisconsin. In *Kryl v. Mechalson*, 259 Wis. 204, 207, 47 N.W.2d 899, 900–01 (1951), a merger clause was held *not* to justify the rejection of parol evidence because, unlike the merger clause in *Edward T. Kelly Co. v. von Zakobiel*, 168 Wis. 579, 171 N.W. 75 (1919), the clause in *Kryl* did not expressly state that "no conditions" existed to performance. Like the clause in *Kryl*, the merger clauses in the instant case do not specifically exclude the existence of conditions. Therefore, we agree with the bankruptcy court's ruling allowing the introduction of parol evidence to demonstrate the existence and scope of a possible condition precedent.

### III

While allowing the use of parol evidence in this case is a prerequisite for finding a condition precedent, it is, in and of itself, not conclusive as to the existence of such a condition. That is, the parol evidence adduced must establish whether a condition precedent existed. We are constrained to apply the "clearly erroneous" standard of review for findings of fact, and we are mindful that our function is not to decide factual issues *de novo*. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed. 2d 129 (1969); Fed.R.Civ.P. 52(a). In this case, we struggle in applying any standard

**6.** In *Marshall & Ilsley Bank v. Milwaukee Gear Co.*, the court excluded parol evidence because it was offered in an attempt to rewrite or alter the stated terms of the contract. The court stated:

> "The offer of proof went not to the existence of a valid and binding agreement, but to prove that the right ... was to be exercisable, contrary to the provisions of the agreement...."

*Marshall & Ilsley Bank*, 62 Wis.2d at 776–77, 216 N.W.2d at 5. We note that in complete context *Tees v. Lee*, 234 Wis. at 610, 291 N.W. at 792, after noting the parol evidence exception, went on to state:

> "The written document pertaining to obligations assumed by each of the parties being set out with great detail and exactness, and being signed by both parties, is convincing that the effort and intention was to place within the four corners of the writing all that needed to be expressed in order to declare the minds of the contracting parties ... to cover the whole field of the written contract."

(Citation omitted). *See generally Sunstream Jet Exp. v. International Air Service Co.*, 734 F.2d 1258, 1265 (7th Cir.1984) (applying Illinois law). This does not go to the admission of parol evidence but to determining the intent of the parties.

because the bankruptcy court failed to sufficiently delineate the evidentiary basis for its decision. *See generally Aunt Mid., Inc. v. Fjell–Oranje Lines,* 458 F.2d 712, 718–19 (7th Cir.), *cert. denied* (1972).

The bankruptcy court's opinion was rendered orally on the record immediately after the close of evidence. In relevant part it stated:

"it *appears* that the evidence heard today *establishes the existence* of a condition precedent and that evidence, which essentially is in the nature of parol evidence, is consistent with the agreement *and recognizes the belief of the parties that Equitable was to be a participant in the affairs of Mr. Robinson* to the extent it would provide him with money which would enable him to complete his obligations under the agreement.

Because Mr. Robinson was not in a position to complete the agreement as *contemplated* by the parties, and as demonstrated clearly by the evidence, he may rescind the agreement and may not be held liable under the terms of the agreement."

(Emphasis added).

It is not clearly erroneous to find that the parties were aware that Robinson was looking to Equitable for financing or even that the parties believed that Equitable's involvement was necessary for the deal. These facts standing alone, however, fail to establish the existence of a condition precedent to Robinson's performance under the agreements, and the bankruptcy court does not state any further factual findings in support of the condition. The district court reviewed the factual record under the same clearly erroneous standard that we apply and stated:

"The possibility that Equitable would not provide the financing was *apparently* not discussed between the parties in much depth because (1) it was not included in the written agreements, (2) personal financial statements from R.V. Robinson were not required, (3) Robinson was solely signing the notes, although Excalibur was aware that Robinson was seeking outside financing, and (4) Bill Ho-

ward made representations that financing would come through."

(Order of district court at p. 12 (emphasis added)).

On the strength of these facts, together with testimony that Excalibur directly communicated with Equitable in hopes of ascertaining how Robinson's attempts at gaining financing were progressing, the district court affirmed the bankruptcy court's holding that there was a condition precedent and further held that there was a "constructive condition precedent." The district court quoted § 632, *Corbin on Contracts* (1952):

"[a] fact or event may be a condition of a contractual right of duty even though the parties had no intention that it would so operate, said nothing about it in words, and did nothing from which an inference of intention can be drawn. When such is the case, the condition is one which can be described as neither an express condition nor an implied condition."

Such a condition, according to the district court, is called a constructive condition. Section 632, *Corbin on Contracts,* also states:

"It [a constructive condition] is operative as a condition for the reason that courts have held or will hold so on grounds of justice that are independent of express condition.... In many cases, indeed, it may be difficult to determine whether the parties intended such a condition or not; and this need not be determined at all *if the court is willing to hold that justice requires the condition whether the parties intended it or not.*"

(Emphasis added).

The bankruptcy court neither uses the phrase "constructive condition precedent" nor expressly discusses "fairness" or "justice" in its denial of Excalibur's requested order. It apparently relies on an express or implied condition precedent without specific findings supporting such reliance. The facts in the record before us are simply inadequate to support the bankruptcy court's finding of a condition precedent of any kind.

Moreover, neither the parties, the district court, nor our independent research discloses the existence of "constructive conditions precedent" under Wisconsin law. There is no federal common law in matters such as this, and federal courts must heed Wisconsin law in this case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Wisconsin recognizes the right of contract as a fundamental right subject only to the limitation that contracts must not be contrary to law or public policy. *Schaal v. Great Lakes Mut. Fire & Marine Ins. Co.*, 6 Wis.2d 350, 356, 94 N.W.2d 646, 649 (1959). It must be assumed that when businessmen negotiate and incorporate the fruits of their negotiations in writing and call it an agreement, they intend to accomplish something of benefit for each. *See Levin v. Perkins*, 12 Wis.2d 398, 403, 107 N.W.2d 492, 495 (1961).

Under the January 28, 1986, agreement Robinson was to end up with the majority ownership of Excalibur. Under the February 7, 1986, loan agreement, he was to receive interest on the loan. In return for selling the stock and paying interest on the loan, Excalibur was to get financing to continue interim operations in an attempt to work itself out of bankruptcy. The bankruptcy court approved the loan. Therefore, unless prohibited by public policy or law, Robinson and Excalibur could allocate the risk of Robinson's financing in any way they deemed appropriate and agreed. The mere failure of a third person to do something essential to the performance of a contract does not release the promissor from performance. *Foster v. Holbrook–Armstrong Iron Co.*, 158 Wis. 447, 450–51, 149 N.W. 148, 150 (1914); *Cf. In re Est. of Zellmer*, 1 Wis.2d 46, 82 N.W.2d 891 (1957) (breach not excused where fact causing impossibility of performance should have been known to breaching party); *Green v. Kaempf*, 192 Wis. 635, 212 N.W. 405 (1927) (financial inability to perform contract does not make

its performance impossible). As reporter's note (d) to § 225, *Restatement of Contract, Second* (1979), summarizes:

> "When one party chooses to use the institution of contract to induce the other party to cause an event to occur, he may do so by making the event a condition of his own duty.... *Or he may do so by having the other party undertake a duty that the event occur. Or he may do both.*"

(Emphasis added).

The bankruptcy court and district court do not discuss how this body of Wisconsin law relates to the facts here. Simply, the bankruptcy court's findings of fact in this case are neither sufficiently clear nor complete to allow the denial of the order for performance of written agreements on the basis of the existence of a condition precedent. Additionally, we do not believe that either the bankruptcy court or the district court considered and applied all pertinent Wisconsin contract law. Because of the insufficient record on appeal and because of the importance of the credibility of witnesses in determining whether a condition precedent to either or both of the agreements exists, we reverse the judgment of the district court with instructions to remand to the bankruptcy court for additional and more detailed findings of fact.[7]

## IV

■ Finally, Excalibur argues that the district court erred in finding Robinson did not waive the condition precedent by advancing $75,000 and $20,000 under the February 7, 1986, loan agreement. Perhaps because the bankruptcy court determined the agreements were aleatory and, in its view, either party was free to rescind the written agreements without liability for breach of contract; or, perhaps, because of the need to reach an expedient resolution of this controversy in the context of Excalibur's reorganization; the bankruptcy court

---

7. Of course, both the bankruptcy and district courts must determine anew that the proceedings conducted on remand meet the jurisdictional and procedural requirements of 28 U.S.C.

§ 1334 and 28 U.S.C. § 157, respectively. *See generally Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

did not address the waiver issue in its bench opinion.

The district court did address the issue. It stated:

"This Court does not find that the payments were a waiver; rather, as Robinson argues [on appeal], the payments evidenced Robinson's good faith in pursuing the agreement, and his belief that Equitable's financing would come through."

We do not believe that it was appropriate for the district court to make the additional finding of good faith on appeal. *In re Neis*, 723 F.2d 584, 590 (7th Cir.1983). We reverse the district court's holding, and remand the matter to district court with instructions to remand to the bankruptcy court for additional findings of fact. Obviously, the bankruptcy court need address this issue only if it determines that Equitable's financing was a condition precedent to Robinson's performance under the agreements.

### V

We agree that parol evidence is admissible to determine whether Equitable's financing of Robinson is a condition precedent to his performance of the January 28 and February 7 agreements. We reverse and remand for detailed findings of fact as to whether such a condition exists, and if so, whether Robinson waived the financing contingency by advancing funds to Excalibur.

REVERSED.